**VAN WATERS & ROGERS INC., a subsidiary of Univar Corporation, Plaintiff–Appellant,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, LOCAL UNION 70; International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 287, Defendants–Appellees.**

No. 89–15959.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 18, 1990.

Decided Sept. 5, 1990.

J. Mark Montobbio, Severson, Werson, Berke & Melchior, San Francisco, Cal., for plaintiff-appellant.

Kenneth C. Absalom, Beeson, Tayer & Silbert (Local 70), and Irwin Leff, Rosenthal & Leff (Local 287), San Francisco, Cal., for defendants-appellees.

Before ALARCON and POOLE, Circuit Judges, and DAVIES,* District Judge.

ALARCON, Circuit Judge:

Van Waters & Rogers, Inc. (Van Waters) appeals from an order affirming an arbitration award in favor of International Brotherhood of Teamsters, Local 70 (Local 70). The arbitrator awarded damages to former Local 70 employees based on Van Waters' breach of the purchase agreement with McKesson Chemical Company (McKesson). Van Waters agreed to assume the terms and conditions of McKesson's collective bargaining agreement with Local 70, including the integration of seniority rights in the event of a takeover. Van Waters contends that the district court erred in affirming the award on the following grounds: (1) the arbitrator exceeded the scope of his authority in resolving a juris-

---

* Honorable John G. Davies, United States District Judge for the Central District of California, sitting by designation.

dictional dispute between two unions; and (2) the award violates the public policy set forth in the National Labor Relations Act (NLRA). We disagree and affirm.

## STATEMENT OF FACTS

Before it ceased operating its Union City plant, on November 1, 1986, McKesson, a division of McKesson Corporation, sold and distributed chemicals nationwide. McKesson serviced an expansive region of Northern California through its Union City, California facility. The seven truck drivers employed by McKesson at the Union City facility were represented by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local Union No. 70 (Local 70). McKesson's most recent collective bargaining agreement with Local 70 was effective through March 31, 1988.

Van Waters, a former competitor of McKesson, sells and distributes chemicals throughout Northern California. Van Waters' Northern California facility is located in San Jose, 20 miles from McKesson's Union City plant. The truck drivers at Van Waters' San Jose facility are represented by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local Union No. 287 (Local 287).

In September 1986, McKesson Corporation decided to discontinue its chemical distribution operation and to sell a substantial amount of the assets of McKesson Chemical to Van Waters. The sale did not include the Union City facility because of environmental contamination concerns. McKesson Corporation agreed to cease all operations at the Union City facility once the sale was consummated.

In the purchase agreement, dated September 19, 1986, Van Waters agreed to offer employment to all employees of McKesson Chemical, including the seven truck drivers. Van Waters also agreed to assume the terms and conditions of the collective bargaining agreement between McKesson and Local 70.

On October 27, 1986, representatives of McKesson, Van Waters, and Local 70 met to discuss the effects of the closure of the Union City facility. At the meeting, Van Waters informed Local 70 of its plan to offer employment to the McKesson drivers at its San Jose facility. Van Waters stipulated, as a condition of employment, that the McKesson drivers would be placed on three months probation, at the end of which they would be placed at the bottom of the San Jose drivers' seniority list. Local 70 proposed that the former McKesson drivers' seniority and wages should continue to be calculated according to its agreement with McKesson. Van Waters rejected this proposed integration of seniority and wages, having established that Local 287 would not amend its collective bargaining agreement with Van Waters to allow such an integration.

At midnight on October 31, 1986, the purchase of the assets of McKesson Chemical by Van Waters was completed and the Union City facility was closed. The seven Local 70 drivers accepted the offer of employment at Van Waters' San Jose facility. Consistent with the stipulation, the drivers were placed on three months' probation, and were subsequently placed at the bottom of the San Jose drivers' seniority list. The terms and conditions of the drivers' employment, including those covering wages and benefits, were as provided in the Local 287 collective bargaining agreement with Van Waters.

On November 25, 1986, Local 70 filed a grievance protesting Van Waters' failure to integrate the seniority of the former McKesson drivers into the existing seniority list at the Van Waters plant. On November 26, 1986, Local 70 filed another grievance for failure to pay wages and fringe benefits under the Local 70 agreement. On January 9, 1987, two of the former McKesson drivers were discharged as Van Waters reduced its work force. On February 18, 1987, Local 70 expanded its grievance to protest the improper layoff of these two employees.

At the arbitration hearing, the parties stipulated that Local 70 was seeking only damages and not equitable relief against

Van Waters. Although the arbitrator ruled that the Local 70 agreement's wage and benefit clause was not applicable to the former McKesson drivers, he granted the grievance demanding that the seniority of the seven former McKesson drivers be considered as integrated with that of the drivers at the Van Waters' San Jose facility. To avoid infringing upon Local 287's jurisdiction, the arbitrator did not force Van Waters to integrate seniority. The arbitrator, instead, ruled that the McKesson drivers, including the two terminated employees, would receive damages under the Local 70 agreement for any wages and other benefits lost because of Van Waters' failure to consider their seniority.

Van Waters filed a petition to vacate the arbitrator's award in district court, arguing that the arbitrator exceeded the scope of his authority and that the award violated public policy. Van Waters joined Local 287 as a party to the petition to vacate. Local 287 moved to be dismissed from the case, but the district court ruled on November 15, 1988 that Local 287 was properly joined as a necessary party under Rule 19(a) of the Federal Rules of Civil Procedure. Local 287 does not appeal from this order. On July 6, 1989, the district court affirmed the arbitrator's award. Van Waters appeals.

## DISCUSSION

◼ "The scope of review of an arbitrator's decision in a labor dispute is extremely narrow." *Federated Dep't Stores v. United Food & Commercial Workers Union, Local 1442*, 901 F.2d 1494, 1495 (9th Cir.1990); *see also United Paper Workers Int'l Union v. Misco*, 484 U.S. 29, 36–37, 108 S.Ct. 364, 369–70, 98 L.Ed.2d 286 ("The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator.").

In *Federated Dep't Stores* we stated: Judicial scrutiny of an arbitrator's decision is extremely limited. The arbitrator's factual determinations and legal conclusions generally receive deferential review as long as they derive their es-

sence from [the collective bargaining agreement]. If, on its face, the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced. This remains so even if the basis for the arbitrator's decision is ambiguous and not withstanding the erroneousness of any factual findings or legal conclusions.

901 F.2d at 1496 (quoting *Stead Motors v. Automotive Machinists Lodge No. 1173*, 886 F.2d 1200, 1209 (9th Cir.1989) (en banc), (quoting *Sheet Metal Workers Int'l Ass'n. Local No. 359 v. Arizona Mechanical & Stainless Inc.*, 863 F.2d 647, 653 (9th Cir. 1988) *cert. denied*, ⸺ U.S. ⸺, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990)).

As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, we cannot overturn his decision simply because it disagrees with his factual findings, contract interpretation, or choice of remedies. *Misco*, 484 U.S. at 37–38, 108 S.Ct. at 370–71, 98 L.Ed.2d 286 (1987).

In *Federated Dep't Stores*, we emphasized three articulated exceptions to the general rule of deferring to the arbitrator's decision:

(1) when the arbitrator's award does not "draw its essence from the collective bargaining agreement" and the arbitrator is dispensing "his own brand of industrial justice"; (2) when the arbitrator exceeds the boundaries of the issues submitted to him; and (3) when the award is contrary to public policy

901 F.2d at 1496 (citations omitted). In this case, Van Waters asserts that the arbitrator exceeded the scope of his authority under the collective bargaining agreement and that his award violated public policy.

## I. ARBITRATOR'S AUTHORITY

◼ Van Waters argues that the arbitrator exceeded the scope of his authority under the collective bargaining agreement by deciding a jurisdictional dispute between Local 70 and Local 287. Neither union raises this claim. The district court found that there was no jurisdictional dispute. The court characterized the money dam-

ages that the arbitrator awarded as compensatory damages resulting from Van Waters' breach of the McKesson/Local 70 agreement that it assumed. Therefore, the district court reasoned that the award created no conflict with Local 287.

Article 16 of the collective bargaining agreement between Local 70 and McKesson/Van Waters provides:

*Article 16—Jurisdictional Disputes*

In the event that *any dispute* should arise *between the Local Union, party to this Agreement or Riders thereto and any other Union, relating to jurisdiction over employees or operations covered by such Agreements,* the Employer and the Local Union agree to accept and comply with the decision or settlement of the Unions or Union bodies which have the authority to determine such dispute, and *such disputes shall not be submitted to arbitration under this Agreement* or Riders thereto or the legal or administrative agency proceedings. Pending such determination, the Employer shall not be precluded from seeking appropriate legal or administrative relief against work stoppages or picketing in furtherance of such dispute.

This provision establishes a limit on an arbitrator's power to resolve disputes involving Local 70. "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement.... [H]is award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Therefore, any ruling on a jurisdictional dispute would be outside the scope of the arbitrator's authority.

## A. WAIVER

■ As an initial matter, Local 70 argues that, by submitting to arbitration, Van Waters waived any objection that the arbitrator lacked authority. "[C]onsent to

grant the arbitrator ... authority [to decide the question of arbitrability] may be implied from the conduct of the parties in the arbitration setting." *George Day Construction Co. v. Carpenters Local 354,* 722 F.2d 1471, 1475 (9th Cir.1984). In *George Day,* we set forth two methods by which a party submitting to arbitration may preserve arbitrability issues for judicial review: a party may (1) "object[ ] to the arbitrator's authority, refuse[ ] to argue the arbitrability issue before him, and proceed[ ] to the merits of the grievance"; or (2) "make[ ] an objection as to jurisdiction and an express reservation of the question on the record." *Id.* at 1475. Because the employer in *George Day* argued the arbitrability issue along with the merits and then submitted the case for decision, the court found that the parties had consented to allow the arbitrator to decide the entire controversy, including the question of arbitrability.

Van Waters carefully preserved its objections to arbitrability, as required by *George Day.* Van Waters stipulated as to the scope of arbitration in this matter, stating:

The Arbitrator only has jurisdiction, and we are only willing to grant the Arbitrator jurisdiction, over the grievances filed by Teamsters Local 70 against McKesson Chemical Company and Van Waters & Rogers based on the closure of the McKesson Union City, California facility and under the Collective Bargaining Agreement between McKesson and Local 70 at that location.

Van Waters further stipulated:

The Arbitrator has no jurisdiction and neither McKesson nor Van Waters & Rogers are willing to concede jurisdiction over the Van Waters & Rogers San Jose facility or the Collective Bargaining Agreement in effect there between Van Waters & Rogers and Teamsters Local 287. *The Arbitrator may, accordingly, make no ruling affecting that facility,* that contract or that local—none of which are a party to the hearing.

(Emphasis added). These stipulations demonstrate that Van Waters did not submit the arbitrability issue to the arbitrator. If

the arbitrator did determine a jurisdictional dispute involving Local 287, Van Waters' objections preserved the issue for judicial review. Because Van Waters preserved the jurisdictional question on record, it has not waived the issue of arbitrability.

Therefore, our decision turns on the determination whether a jurisdictional dispute existed.

## B. JURISDICTIONAL DISPUTE

■ In *Carey v. Westinghouse Electric Co.*, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964), the Supreme Court defined a jurisdictional dispute as follows:

> [T]he term "jurisdictional" is not a word of a single meaning. In the setting of the present case this "jurisdictional" dispute could be one of two different, though related, species: either (1) a controversy as to whether certain work should be performed by workers in one bargaining unit or those in another; or (2) a controversy as to which union should represent the employees doing particular work.

*Id.* at 263, 84 S.Ct. at 404. The instant controversy does not fit squarely within either prong. No party is questioning what kind of work should be done by any of the drivers and Local 70 is not competing with Local 287 for representation of the seven McKesson drivers. Although "jurisdictional" has many meanings, and the factors the Court selected were relevant "in the setting of the present case," *Carey*, 375 U.S. at 263, 84 S.Ct. at 404, we are of the opinion that the arbitrator did not resolve a jurisdictional dispute under any plausible definition of the term.

Article 37 of the Local 70 collective bargaining agreement provides:

*Article 37—Seniority Rights*

In the event of the purchase, sale, merger, transfer, or change of operations between companies either of which are parties to this Agreement, the employees will establish seniority in the new operation by integration based on the original date of hiring recognized by the last employer.

The employer shall notify the Union in advance of any intended layoff of any seniority employee which would result from the above so that the Union will have the opportunity to negotiate the impact of the layoff on the employee.

It is quite possible that a jurisdictional dispute may someday arise between the bargaining units concerning the provisions of Local 70's collective bargaining agreement with McKesson that mandate seniority integration for its former employees. No such dispute, however, was submitted to the arbitrator in this matter. The arbitrator's order and award made clear that he did not reach or resolve the question whether Van Waters must integrate the McKesson employees according to the date they were hired by McKesson. The relevant issue identified by the arbitrator, is:

> Was there a purchase and sale between McKesson and Van Waters; if so, *was there a contractual obligation under the Local 70 Agreement that the seniority of the seven former McKesson drivers be considered as integrated with that of the drivers at the Van Waters San Jose facility* on the basis of the McKesson drivers' original date of hiring recognized by McKesson; and if so, what is the appropriate remedy for the failure to fulfill it?

(Emphasis added). The arbitrator framed the issue in terms of how damages would be computed to protect the Local 70 employees' rights as third party beneficiaries under the purchase agreement without impinging the seniority rights of Local 287's members. The arbitrator interpreted the purchase agreement as protecting the seniority rights set forth in Local 70's collective bargaining agreement. If violated, these rights could be remedied by an award of damages rather than specific performance. These employment rights were set forth in Article 2 of the Local 70 agreement:

*Article 2—Transfer of Company Title or Interest*

In the event the Employer fails to require the purchaser, transferee, or lessee

to assume the obligations of this Agreement, the Employer (including partners thereof) shall be liable to the Local Union and to the employees covered for all damages sustained as a result of such failure to require assumption of the terms of this Agreement....

As this language mandates, the arbitrator is enforcing McKesson's duty, assumed by Van Waters in the purchase agreement, to compensate the Local 70 employees in the event that they are damaged by a takeover. By defining the issue as compensation rather than implementation, the arbitrator avoided any jurisdictional dispute that strict enforcement of Article 37 would have created.

The arbitrator designed an award that would not impinge on the collective bargaining agreement between Van Waters and Local 287. The arbitrator's opinion provides:

Given the stipulation of the parties, the Arbitrator will not grant any equitable relief and will award only damages under the Local 70 Agreement. In awarding damages, the Arbitrator makes no determination of the rights of any employee, or the obligations of Van Waters, under the Van Waters–Local 287 Agreement.

The arbitrator awarded money damages to the former McKesson employees for breach of the terms of Local 70's collective bargaining agreement. The order does not interpret Local 287's collective bargaining agreement with Van Waters. The arbitrator carefully fashioned an award that considers the employees as having seniority for purposes of calculating compensatory damages, but did not purport to compel Van Waters to award the former McKesson employees seniority rights that adversely affect employees covered by Local 287's collective bargaining agreement. Because he did not attempt to resolve a jurisdictional dispute between the two unions, the arbitrator did not exceed his authority under the collective bargaining agreement.

## II. PUBLIC POLICY EXCEPTION

Van Waters also argues that the district court should have overturned the arbitrator's award because it violates public policy. It is a well-settled rule that a court cannot enforce an award which violates public policy. *Federated Dep't Stores*, 901 F.2d at 1496; *see also W.R. Grace v. Local Union 759*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983) ("As with any contract ... a court may not enforce a collective bargaining agreement that is contrary to public policy.").

For a court to overturn an arbitrator's award, the public policy violated must be well defined and dominant, and ascertained "'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *W.R. Grace*, 461 U.S. at 766, 103 S.Ct. at 2183 (quoting *Muschany v. United States*, 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945)). Van Waters contends that the arbitration award is in violation of the public policy set forth in Sections 7 and 9(a) of the National Labor Relations Act (NLRA). Section 7 of the NLRA provides:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, *to bargain collectively through representatives of their own choosing,* and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all such activities....

29 U.S.C. § 157 (1988) (emphasis added). Section 9(a) of the NLRA provides:

Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be *the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment.*

*Id.* § 159(a) (emphasis added).

The public policy set forth in the NLRA represents "well defined and dominant public policy." *Local 1 Amalgamated Lithographers of Am. v. Stearns & Beale, Inc.,* 812 F.2d 763, 769 (2d Cir.1987). Although

this circuit has not addressed the issue,[1] the Fifth Circuit has held that an arbitrator's award which is repugnant to the NLRA may not be enforced. *General Warehousemen & Helpers Local 267 v. Standard Brands, Inc.,* 579 F.2d 1282, 1292 (5th Cir.1978), *cert. dismissed,* 441 U.S. 957, 99 S.Ct. 2420, 60 L.Ed.2d 1075 (1979).

■ Van Waters argues that the arbitration award conflicts with the language in the NLRA that allows only chosen representatives to bargain collectively. Because the arbitrator penalized it for failing to integrate seniority by awarding damages, Van Waters argues that the effect of the award is to mandate that the seniority system be modified without any authorized alterations of Local 287's collective bargaining agreement. This argument misrepresents the arbitrator's award. The arbitrator held:

> The language of Article 37 is clear and unambiguous: if 'a purchase, sale, merger, transfer or change of operations [occurs] between companies, either of which are parties to the Agreement,' *seniority should be established at the new operation based on the original hiring date recognized by the last employer.*
>
> . . . .
>
> ... [I]n the face of the clear contractual language of Article 37, the seniority of the former McKesson drivers must be *considered as having been integrated* with that of the Van Waters San Jose drivers, based on their seniority date with McKesson. *To rule otherwise would contravene the plain meaning of the Article.*

(Emphasis added). The arbitrator ruled that the McKesson drivers, including the two terminated employees, "shall receive damages under the Local 70 Agreement for any wages and other benefits lost because of Van Waters' failure to properly consider their seniority." He did not, however, compel specific performance of the seniority provisions of Local 70's collective bargaining agreement with Van Waters.

Van Waters argues that the damages award is tantamount to a requirement that it integrate seniority in order to avoid further liability. Van Waters contends, in effect, that an arbitration award of damages is unenforceable if an order of specific performance of the underlying contractual obligation would violate public policy. In *W.R. Grace,* the Supreme Court recognized that there is a fundamental difference between remedying a contractual breach by requiring specific performance or alternatively awarding damages. 461 U.S. at 769 n. 13, 103 S.Ct. at 2185 n. 13. *W.R. Grace* involved a conciliation agreement, requiring damages, that conflicted with the seniority provisions of petitioner's existing collective bargaining agreement with its union. The Supreme Court noted that "[c]ompensatory damages may be available to a plaintiff injured by a breach of contract even when specific performance of the contract would violate public policy." *Id.* at 769 n. 13, 103 S.Ct. at 2185 n. 13 (citing *Restatement (Second) of Contracts* § 365, comment a (1981)). In limiting the award to damages, the arbitrator avoided any violation of the NLRA that an award of specific performance might have created.

Thus under *W.R. Grace,* Van Waters cannot avoid its obligation to compensate the former McKesson employees by claiming that the specific performance would violate public policy. The district court correctly stated that Van Waters and McKesson cannot "escape the consequences of their business judgments and their collective bargaining strategies by shifting the financial loss to the former McKesson employees."

Van Waters agreed to assume McKesson's obligations under the Local 70 collective bargaining agreement. An employer who freely enters into an agreement cannot

---

**1.** Van Waters cites *Carpenters' Local Union No. 1478 v. Stevens,* 743 F.2d 1271 (9th Cir.1984), *cert. denied,* 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985), to support the proposition that an award repugnant to the NLRA is unen-

forceable. Our decision in *Stevens* is inapposite. *Stevens* stands for the proposition that an award which is inconsistent with a previous ruling by the National Labor Relations Board is unenforceable. *Id.* at 1275.

refuse to perform his contractual obligations merely because they may conflict with a duty owed to a third party. *See W.R. Grace*, 461 U.S. at 770, 103 S.Ct. at 2185 ("The Company voluntarily assumed its obligations under the collective-bargaining agreement and the arbitrator['s] interpretation[ ] of it. No public policy is violated by holding the Company to those obligations....").

The judgment is AFFIRMED.