**VAN WATERS & ROGERS, INC.,**
**Plaintiff–Appellant,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Defendant–Appellee.**

**No. 93–16514.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 16, 1995.

Decided June 7, 1995.

J. Al Latham, Paul, Hastings, Janofsky & Walker, Los Angeles, CA, for plaintiff-appellant.

Kenneth C. Absalom, Beeson, Tayer & Bodine, San Francisco, CA, for defendant-appellee.

Before: SNEED and O'SCANNLAIN, Circuit Judges, and MERHIGE,* District Judge.

O'SCANNLAIN, Circuit Judge:

We must decide whether an arbitrator exceeded his authority or violated public policy by ordering a make-whole remedy that extended beyond the expiration of a collective bargaining agreement.

I

The facts surrounding this controversy were not disputed. Before it ceased operating its Union City, California plant on November 1, 1986, McKesson Chemical Company ("McKesson"), a division of McKesson

---

* The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Corporation, sold and distributed chemicals nationwide. The seven truck drivers employed by McKesson at the Union City facility were represented by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local Union No. 70 ("Local 70").

Van Waters & Rogers Inc. ("Van Waters") was a competitor of McKesson, also selling and distributing chemicals nationwide, and it maintained a facility in San Jose, California. Van Waters' truck drivers are represented by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local Union No. 287 ("Local 287").

In September 1986, Van Waters agreed to purchase substantially all of McKesson's nationwide assets. In the purchase agreement, Van Waters agreed to offer employment to all McKesson employees. Van Waters did offer employment to all seven former McKesson truck drivers, and all seven accepted.

Van Waters also agreed to assume all the terms and conditions of the Collective Bargaining Agreement ("the Agreement") between McKesson and Local 70. Article 37 of the Agreement provided that:

> In the event of the purchase, sale, merger, transfer or change of operations between companies either of which are parties to this Agreement, the employees will establish seniority in the new operation by integration based on the original date of hiring recognized by the last employer.

After the purchase was completed, Van Waters refused to honor this provision. Instead, it placed the seven former McKesson drivers at the bottom of its seniority list. Three months after the sale, Van Waters discharged two of the former McKesson drivers as part of a reduction in work force. Had Van Waters integrated the seniority of those two drivers into the seniority list of the existing Van Waters drivers, the former McKesson drivers would not have been discharged. Similarly, the five former McKesson drivers who are still working at Van Waters' San Jose facility would have had additional fringe benefit entitlements and greater overtime work opportunities had their seniority been integrated.

Accordingly, Local 70 filed a grievance protesting Van Waters' failure to integrate the seniority of the former McKesson drivers into the existing seniority list. The matter went to arbitration, and Arbitrator Bartosic granted Local 70's grievance, finding that Article 37 required that the drivers' seniority be integrated. Although ordinarily in a case of this kind an arbitrator would order specific performance (that is, order back pay plus order Van Waters to reinstate the two discharged drivers and to integrate the seniority of the remaining drivers), Arbitrator Bartosic did not order specific performance because he determined that to do so would improperly interfere with the collective bargaining agreement existing between Van Waters and Local 287. Instead, he ordered that the aggrieved employees be made whole through an award of damages ("Award I").

Van Waters subsequently petitioned the district court to vacate Award I. The district court denied the petition and confirmed the award. Van Waters then appealed to the Ninth Circuit, which also affirmed the award. *See Van Waters & Rogers, Inc. v. International Bhd. of Teamsters,* 913 F.2d 736 (9th Cir.1990).

The matter was then reconvened before Arbitrator Bartosic in order to establish the specific amount of damages due. The parties, however, asked the arbitrator merely to set forth "guidelines" from which they could negotiate a settlement, rather than to decide on a specific damage award; if the negotiations proved unsuccessful, the arbitrator would then resolve the matter.

At the "guidelines hearing" Van Waters argued that any damage award for the breach of Article 37 must end on the day the Local 70 Agreement expired. Van Waters argued that such a limitation is required by Article 2 of the Agreement, which provides that the parties' "rights" under the Agreement terminated when the Agreement expired.

Arbitrator Bartosic rejected Van Waters' argument. He noted that the Ninth Circuit had already affirmed that the former McKesson drivers were entitled to a make-whole remedy of damages for the breach of Article

37. Arbitrator Bartosic reasoned that since the injury caused by the breach extended beyond the expiration of the Agreement, the damages should be liquidated through a damage award that included some amount of future damages, as is allowed in common-law employment breach-of-contract cases. The arbitrator explicitly stated that any future damages would be limited to a reasonable period of time, to be determined in light of a number of relevant factors, including setoffs for mitigation.[1]

Van Waters responded to the arbitrator's award by petitioning the district court to vacate that portion of the award allowing for damages beyond the expiration of the Agreement. Both parties moved for summary judgment, and the district court granted Local 70's motion. Van Waters appeals.

## II

We review the district court's grant of summary judgment de novo. *Jones v. Union Pacific R.R.*, 968 F.2d 937, 940 (9th Cir.1992). However, because federal labor policy strongly favors resolving labor disputes through arbitration, *see United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960), "[i]t is well established that review of an arbitrator's decision is *extremely* narrow." *Stead Motors v. Automotive Machinists Lodge*, 886 F.2d 1200, 1208 n. 2 (9th Cir.) (en banc), *cert. denied*, 495 U.S. 946, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990) (emphasis in original). We are not empowered to second-guess the arbitrator's findings. *United Paperworkers Int'l v. Misco*, 484 U.S. 29, 38, 108 S.Ct. 364, 370–71, 98 L.Ed.2d 286 (1987). Rather, our review is "limited to whether the arbitrator's solution can be rationally derived from some plausible theory of the general framework or intent of the agreement." *Desert Palace, Inc. v. Local Joint Executive Bd. of Las Vegas*, 679 F.2d 789 (9th Cir.1982).

However, we have acknowledged three exceptions to the general rule of deference: (1) when the arbitrator's award does not "draw its essence from the collective bargaining agreement" and the arbitrator is dispensing "his own brand of industrial justice"; (2) when the arbitrator exceeds the boundaries of the issues submitted to him; and (3) when the award is contrary to public policy.

*Van Waters*, 913 F.2d at 739 (quoting *Federated Dep't Stores v. United Food Commercial Workers Union Local 1442*, 901 F.2d 1494, 1496 (9th Cir.1990) (citations omitted)).

Van Waters challenges the award of damages on two of the above grounds: that the award does not draw its essence from the Agreement and that the award is contrary to public policy.

### A

Van Waters challenges the arbitral award insofar as it authorizes damages for a reasonable period of time after the expiration of the Agreement.

#### 1

Van Waters maintains that this aspect of the award does not draw its essence from the collective bargaining agreement because it ignores Article 2 which, according to Van Waters, expressly limits the union's rights to the life of the Agreement. Article 2 reads in relevant part:

This agreement shall be binding upon the parties hereto, their successors, administrators, executors and assigns. In the event an entire operation, or rights only are sold, leased, transferred or taken over by sales, transfer, lease, assignment, receivership, or bankruptcy proceedings, such operation or use of such rights shall continue to be subject to the terms and conditions of this Agreement *for the life thereof.*

(emphasis added).[2] Van Waters contends that because Article 2 limits the union's

---

1. We thus agree with the district court that "Van Waters' repeated characterization of the award as providing for damages 'into perpetuity' has no basis in the award" because the arbitrator clearly

held that any future damages would be limited to a reasonable period of time.

2. Article 2 is known as a successorship clause. Successorship clauses impose a duty on the sell-

rights to the life of the Agreement, the arbitrator could not have been interpreting the Agreement when he ordered a damages remedy that extended beyond the expiration of the Agreement.

In support of its position, Van Waters cites *Polk Bros., Inc. v. Chicago Truck Drivers Union*, 973 F.2d 593 (7th Cir.1992). In *Polk Bros.* the company's distribution center was completely destroyed by fire. The company thereafter discharged all of its distribution center employees and subcontracted out the work that they had performed. The arbitrator determined that the subcontracting violated the company's collective bargaining agreements and ordered a make-whole remedy. The company sought to vacate the remedy, insofar as it ordered reinstatement and back pay after the contract's expiration date. The Seventh Circuit affirmed the district court's grant of summary judgment to the company, holding that the award did not draw its essence from the collective bargaining agreements because the agreements "did not allow the arbitrator to award reinstatement beyond their express termination dates." *Id.* at 598–99.

In like vein, Van Waters cites *General Warehousemen and Helpers Local 767 v. Standard Brands, Inc.*, 579 F.2d 1282 (5th Cir.) (en banc), *cert. dismissed*, 441 U.S. 957, 99 S.Ct. 2420, 60 L.Ed.2d 1075 (1978). In that case, the arbitrator determined that Standard Brands had breached its collective bargaining agreement with the Teamsters by moving its facility to another city and negotiating with another union. Remanding the matter to the arbitrator for a reformulation of the damages, the court noted that

> [t]he fact that the contract which was breached was due to expire April 30, 1976, is controlling as to the period for which damages may be awarded. Nothing in that contract could have created an expectation that the employees would have con-

tinued to enjoy the same wages and benefits beyond the expiration of the contract. *Id.* at 1295.

Arbitrator Bartosic considered Van Waters' argument but rejected it. The arbitrator stated "the award of damages was not based on successorship principles, [i.e., Article 2], but rather on the plain language of Article 37, which obliged McKesson to assure that any purchaser integrate the seniority of the McKesson employees with that of the purchaser's employees." The arbitrator found that it was appropriate for some damages to accrue after the expiration of the Agreement because "Article 37 does not suggest in any way that the integration of seniority would cease at the new operation on the date of the expiration of the Local 70 Agreement." The arbitrator concluded that the decisive consideration was that the breach took place during the life of the Agreement.

The district court confirmed the award, finding that it represented a clearly plausible interpretation of the Agreement and noting the narrow scope of judicial review.

### 2

■ A court must affirm an arbitral award "[a]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Van Waters*, 913 F.2d at 739. We affirm for the following reasons.

First, we note that the arbitrator construed the Agreement by addressing Van Waters' argument directly, interpreting Article 2 as not limiting damages for a breach of Article 37's integrated seniority provision.[3] Second, Article 2 may be read consistently with the arbitral award. For instance, the district court noted that the only "right" at issue was the right to have seniority integrated *upon the sale of the business* which "right" matured, of course, before the expira-

er to condition the sale of a business upon the purchaser's promise to assume the collective bargaining agreement in its entirety.

**3.** Thus, Van Waters' reliance on *Ficks Reed Co. v. Local 112 Int'l Union*, 965 F.2d 123 (6th Cir. 1992), is misplaced. In *Ficks,* the arbitrator completely ignored language in a Strike Replace-

ments Agreement which expressly provided for a different result than the arbitrator had reached. Here, Arbitrator Bartosic considered Van Waters' argument that Article 2 limited the damage award but determined that it was an improper reading of the Agreement.

tion of the Agreement. As the district court stated:

> Rather, the arbitrator simply found that the *damages* incurred from the breach of Article 37 extended beyond the expiration of the [Agreement], and therefore, any make-whole damage award must also include some reasonable, liquidated measure of the damages suffered beyond this point—especially given the unavailability of specific performance as a remedy. Under this view, the arbitrator's decision is fully consistent with the [Agreement].

(emphasis in original).

Indeed, support for the arbitrator's position can be found in the text of Article 2, the very provision upon which Van Waters relies for its contrary interpretation. After Article 2 recites that the rights of the parties are limited to the life of the Agreement, it goes on to provide that upon a breach of its provisions, "the Employer . . . shall be liable to the Local Union and to the employees covered *for all damages* sustained as a result of [the breach.]" (emphasis added). Thus, even Article 2, by its own terms, does not limit damages to the term of the Agreement.

Second, we are not persuaded by Van Waters' contention that the award is vulnerable because the arbitrator relied on external law. In *Enterprise Wheel*, the Supreme Court rejected the argument that an arbitrator does not base his decision on the contract merely because he applies "correct principles of law to the interpretation of the collective bargaining agreement." 363 U.S. at 598, 80 S.Ct. at 1361. Rather, the Court held that an arbitrator may look "to 'the law'" for guidance so long as the decision draws its essence from the Agreement. *Id.*

Third, we agree with both the arbitrator and the district court that *Polk* and *Standard Brands* are distinguishable. Those cases involved only successorship provisions; here, we have an obligation that arose independently of a successorship clause and pursuant to a separate, specific contractual provision.

Finally, we find no merit in Van Waters' contention that a remedy which extends beyond the expiration date of a collective bargaining agreement is per se inappropriate.

Indeed, in *Enterprise Wheel*, the Supreme Court reversed a court of appeals decision that vacated an arbitral award because the award extended beyond the expiration of the collective bargaining agreement. 363 U.S. at 599, 80 S.Ct. at 1362; *see also ILWU Local 142 v. Land & Constr. Co.*, 498 F.2d 201, 204 (9th Cir.1974) (holding that an arbitral award of back pay that continued beyond the expiration of the collective bargaining agreement was perfectly appropriate because the agreement contained no provision restricting back pay to the term of the agreement). Indeed, the Supreme Court has emphasized the need for flexibility in formulating a remedy for breach of a collective bargaining agreement. *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361. "The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency." *Id.* These words seem especially apt here, given that the normal remedy of specific performance is unavailable.

**B**

█ Van Waters' second contention is that the arbitral award violates public policy and for that reason cannot be enforced. Van Waters argues that the award offends the principles embodied in sections 7 and 9(a) of the National Labor Relations Act ("NLRA"). Section 7 of the NLRA provides that "[e]mployees shall have the right . . . to bargain collectively through representatives of their own choosing." 29 U.S.C. § 157. Section 9(a) provides that "[r]epresentatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit . . . shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining." 29 U.S.C. § 159(a). Van Waters maintains that Arbitrator Bartosic's award of future damages impinges on Local 287's authority to bargain collectively, transforming Local 70's Agreement into a "super-authority" that will "continue into perpetuity and *never* be modified."

The district court found Van Waters' characterization misleading. "The decision does *not* mandate the continued enforcement of any provision of the expired Local 70 agree-

ment. All it does is attempt to fashion reasonable guidelines for liquidating a one-time breach of Article 37." Moreover, the argument Van Waters makes here is the same one that the Ninth Circuit rejected when considering Van Waters' previous petition challenging Award I:

> Van Waters argues that the arbitration award conflicts with the language in the NLRA that allows only chosen representatives to bargain collectively. Because the arbitrator penalized it for failing to integrate seniority by awarding damages, Van Waters argues that the effect of the award is to mandate that the seniority system be modified without any authorized alterations of Local 287's collective bargaining agreement.

*Van Waters*, 913 F.2d at 743. The Ninth Circuit rejected Van Waters' argument, reasoning that because the arbitrator did not order specific performance, and instead limited any potential recovery to damages, no conflict in the bargaining relationship with Local 287 would arise. *Id.*

Van Waters maintains that its claim here is different because Van Waters now emphasizes the future damages aspect of the award. We are unpersuaded. Since this court determined that payment of damages *during* the term of the Local 70 Agreement does not violate public policy, it can hardly be different with respect to the period *after* the Agreement expired.

In any event, Van Waters' public policy claim lacks merit regardless of whether the previous panel rejected it. Van Waters argues that the award makes "it impossible for *anyone* to negotiate an effective modification of the Agreements' provisions, and allow[s] a defunct agreement to exert control over Van Waters' current employees." According to Van Waters, "[t]he award deprives Local 287 and Van Waters of the power to change or enforce the seniority provisions of their agreement relative to the former McKesson employees."

Van Waters' characterization of the award is simply not accurate. Nothing in the award prevents Van Waters from proposing modifications to the Local 287 seniority provisions. Van Waters has chosen not to propose any changes. Indeed, had the Local 287 seniority provision been revised, Arbitrator Bartosic likely would have considered that fact. The arbitrator noted that the future damages may be assessed on a periodic basis so as to take future events into account. It is true that Van Waters now finds itself in an undesirable situation, owing damages because it is prevented by the Local 287 Agreement from specifically performing the contractual obligations it owes to the McKesson drivers. But as this court concluded in affirming Award I, the mess is one of Van Waters' own making:

> Van Waters and McKesson cannot escape the consequences of their business judgments and their collective bargaining strategies by shifting the financial loss to the former McKesson employees. Van Waters agreed to assume McKesson's obligations under the Local 70 collective bargaining agreement. An employer who freely enters into an agreement cannot refuse to perform his contractual obligations merely because they may conflict with a duty owed to a third party.

913 F.2d at 744 (quotation omitted).

### III

In sum, Arbitrator Bartosic's award draws its essence from the Local 70 Agreement and does not offend public policy.

AFFIRMED.