# In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 09-2453 & 09-2517

PRATE INSTALLATIONS, INC.,

*Plaintiff-Appellee/*
*Cross-Appellant*,

*v.*

CHICAGO REGIONAL COUNCIL OF CARPENTERS,

*Defendant-Appellant/*
*Cross-Appellee.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 5377—**Amy J. St. Eve**, *Judge*.

ARGUED JANUARY 21, 2010—DECIDED JUNE 4, 2010

Before EASTERBROOK, *Chief Judge*, and CUDAHY and
MANION, *Circuit Judges*.

CUDAHY, *Circuit Judge*. This is an appeal from an en-
forcement proceeding to confirm an arbitration award
in favor of Prate Installations, Inc. (Prate) because of a

contract breach by the Chicago Regional Council of Car-penters (Union). The district court confirmed the arbitra-tor's award in part and vacated it in part because it held that the arbitrator interpreted a subsequent collective bargaining agreement (CBA) that it had no authority to construe. We affirm because the district court properly modified the award.

## I. Background

Prate is a construction firm in the Chicagoland area. It performs residential and commercial roofing as well as installing gutters, insulation and siding. Prate and the Union have been at odds for years. In 2002, the Union went on strike over a dispute regarding Prate's payments to a certain trust fund that is jointly managed by the Union and the Residential Construction Employer's Council (RCEC). Prate is a member of the RCEC, which is the bargaining representative of employers in the residential construction industry. The parties also became involved in litigation related to the trust fund payments. They eventually settled the litigation and the strike, and they released each other from any claims based on actions taken prior to July 2002.

Unfortunately the acrimony between Prate and the Union continued, this time because the Union allegedly required Prate to pay hourly wages while allowing Prate's competitors to pay their union workers on a piecework

basis.[1] In September 2003, Prate filed a grievance alleging that the Union violated the Most Favored Nations (MFN) clause of the 2001 CBA, negotiated between RCEC and the Union.[2] The CBA's MFN clause ensured employers that they would not be subject to more unfavorable wage rates than those agreed upon by the Union for other employers.[3] The 2001 CBA required that employers pay their workers on an hourly basis and explicitly prohibited the workers from performing work on a piecework basis. CBA Article 20.9.

To resolve Prate's grievance, the parties mutually selected Arbitrator James P. Martin from a list provided

---

[1] A worker paid on a piecework basis receives compensation based on the production achieved, not on the time spent working.

[2] The Union does not negotiate individual contracts with individual employers. Also, the "2001 CBA" is actually an interim agreement that extended all material provisions of a 1998 CBA between the Union and the RCEC until 2005, when the 2005 CBA came into effect. We adopt this shorthand used by the district court.

[3] The MFN clause provided:

> In no event shall any EMPLOYER be required to pay higher wage rates or be subject to more unfavorable wage rates, contract terms or work rules, than those agreed to by the UNION in any Collective Bargaining Agreement with any other construction industry employer with [sic] Cook, Lake and DuPage Counties, Illinois.

CBA Article 21.1(a).

by the Federal Mediation and Conciliation Service and, as is standard, the parties waived their right to each appoint an additional arbitrator. The selected arbitrator framed the dispute as addressing the question: "Was the union in violation of the agreement and more particularly the Most Favored Nations provision of the 2001 [CBA] by subjecting [Prate] to wage rates, contract terms or work rules inconsistent with the manner in which the agreement was enforced for all other specialty trade employers? If so, what is the remedy?" He found that the Union had violated the MFN provision by enforcing the hourly wage-rate requirement for Prate, while allowing piecework basis pay for other construction employer signatories of the 2001 CBA. He awarded $9,434,436 in damages for violations from the July 2002 claim release date until the time of the award, September 2008, and, going forward, allowed Prate to pay on a piecework basis until the Union began complying with the MFN clause. He also awarded Prate reasonable attorneys' fees, not to exceed $2 million.

The parties agree that Arbitrator Martin did not retain jurisdiction to resolve any subsequent controversy with respect to implementation of the award. In addition, they both acknowledge that the 2005 CBA, which replaced the 2001 CBA and came into effect October 1, 2005, established a standing panel of five rotating arbitrators, and Arbitrator Martin was not a member of that panel. The 2005 CBA contained the same MFN provision and the same prohibition on piecework pay as the 2001 CBA.

The Union advised Prate that it did not intend to comply with the arbitrator's award. Prate filed the present

lawsuit, under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to confirm the award, and the Union counterclaimed to set it aside. The district court reduced the award because it held that the arbitrator lacked authority to award damages for the period after the expiration of the 2001 CBA. Similarly, the district court vacated the equitable order, which permitted Prate to pay by piecework, because the equitable award applied well after the expiration of the 2001 CBA and, therefore, Arbitrator Martin had no authority to award it. The district court, however, confirmed the award of damages for violations during the term of the 2001 CBA and the award of attorneys' fees. The present cross-appeals followed.

## II.  Standard of Review

Summary judgment is proper if the record demonstrates that there is no genuine issue as to any material fact and that, viewing the disputed evidence in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); *Scott v. Harris*, 550 U.S. 372, 378-80 (2007). "We review de novo a district court's decision on cross-motions for summary judgment, meaning that we review the arbitrator's decision as if we were the court of first decision." *United Food & Commercial Workers, Local 1546 v. Ill. Am. Water Co.*, 569 F.3d 750, 754 (7th Cir. 2009) (internal citations omitted). Judicial review of arbitration awards is extremely limited, and the merits of the arbitrator's decision will not be reviewed. See *Major League Baseball*

*Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001); *Monee Nursery & Landscaping Co. v. Int'l Union of Operating Eng'rs, Local 150*, 348 F.3d 671, 675 (7th Cir. 2003). "When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's improvident, even silly, factfinding does not provide a basis for a reviewing court to refuse to enforce the award." See *Garvey*, 532 U.S. at 509 (internal citations omitted). Therefore, the arbitrator's award must draw its essence from the contract—an arbitrator is not free to say "[t]he contract says X, but my view of sound policy leads me to decree Y." *Chi. Typographical Union No. 16 v. Chi. Sun-Times, Inc.* 935 F.2d 1501, 1505 (7th Cir. 1991); see also *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36-39 (1987).

### III. Discussion

#### 1. The arbitrator permissibly interpreted the CBA to find that the Union violated the MFN clause.

The arbitrator found that there were no other contracts with more favorable wage rates between the Union and Prate's competitors. The Union contends that this finding should have ended the arbitrator's inquiry into whether the Union had violated the MFN clause and that, therefore, the arbitrator "manifestly disregarded the law" by concluding that there was a violation. It is well established that, when arbitrators draw their conclusions from the applicable collective bargaining agreements, the awards are legitimate. See *United Steelworkers*

*of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). We give great deference to the arbitrator when reviewing interpretations of a CBA and all doubts should be resolved "in favor of enforcing the award." *Clear Channel Outdoor, Inc. v. Int'l Unions of Painters & Allied Trades, Local 770*, 558 F.3d 670, 675 (7th Cir. 2009). In fact, "[e]ven if we are convinced that the arbitrator's error in interpreting the parties' agreement was plain, we lack the authority to intervene." *Id.* at 677.

In the present case, the arbitrator interpreted the MFN clause of the 2001 CBA as forbidding the Union from selectively enforcing the no piecework provision. The Union's contention that the arbitrator's interpretation of the MFN clause was incorrect is simply asking for judicial review of the merits of the arbitrator's decision. This we will not do, so long as the arbitrator was interpreting the proper contract. See *Enter. Wheel*, 363 U.S. at 596-97. The district court correctly held that the arbitrator permissibly determined that the Union violated the MFN clause of the 2001 CBA.

**2.  The district court did not err in striking the portion of the arbitrator's award that extends past the expiration of the 2001 CBA.**

Prate contends that the arbitrator's award was simply aimed at making Prate whole and that the district court erred when it reduced the award. Arbitrator Martin found that the violation of the 2001 CBA was a continuing one, and awarded damages up to the date of the issuance of

the award and prospective equitable relief until the Union uniformly enforced the MFN clause.

Arbitrators must have flexibility to determine remedies, and the "authority to interpret and find a breach of the agreement implies the authority to prescribe a remedy to cure the breach." *Dexter Axle Co. v. Int'l Assoc. of Mach. & Aerospace Workers*, 418 F.3d 762, 768-69 (7th Cir. 2005) (citing, inter alia, *Enter. Wheel*, 363 U.S. at 597). Remedies that extend beyond the termination of the CBA at issue are not necessarily impermissible. In *Enterprise Wheel*, the Supreme Court held that an arbitrator may have properly interpreted and remedied a violation of a CBA, even though the award of back pay and the reinstatement of the employees extended beyond the expiration of that agreement. See *Enter. Wheel*, 363 U.S. at 597; see also *Van Waters & Rogers, Inc. v. Int'l Bhd. of Teamsters*, 56 F.3d 1132, 1135-37 (9th Cir. 1995) (construing a CBA, which required that a new owner maintain the employees' seniority rights and remedy "all damages sustained" as a result of a contract breach, to allow damages post-expiration). Likewise, a court has upheld an award that was based on violations that were probably outside the scope of the applicable CBA because of the strong deference accorded arbitrators' decisions. See *Nat'l Postal Mail Handlers Union v. Am. Postal Workers Union*, 589 F.3d 437, 442-44 (D.C. Cir. 2009) (holding that it was likely an error for the arbitrator to find the grievances arbitrable, but that he did not exceed his authority by interpreting the contract and in the process relying on a background principle of law).

However, in this instance the principle that an arbitration may provide a remedy that extends beyond the term of the CBA under consideration must yield to the circumstance that controls here. As the district court correctly determined, the appropriateness of post-expiration awards turns on the authority of the arbitrator. RCEC and the Union materially altered the arbitration procedures for the 2005 CBA to require that a standing panel of arbitrators, not including Arbitrator Martin, resolve disputes. Therefore, Arbitrator Martin had no authority to interpret subsequent CBAs. In *Polk Brothers, Inc. v. Chicago Truck Drivers*, we rejected the union's argument that when a CBA limited an arbitrator's jurisdiction, it did not also limit the arbitrator's authority to remedy a violation that was within its jurisdiction. 973 F.2d 593, 597 (7th Cir. 1992) (upholding the district court's decision to vacate the part of the arbitrator's award that reinstated employees past the expiration of the applicable agreement). *Enterprise Wheel* is distinguishable from the present case because there was no subsequent CBA that cut off the arbitrator's jurisdiction. See 363 U.S. at 595, 597-98. Likewise, in *Van Waters*, the Ninth Circuit was able to point to a particular contract provision that authorized the arbitrator to award relief beyond the agreement's expiration. See 56 F.3d at 1136.

We do not want to overstate our holding. The Union argues that *Totes Isotoner Corporation v. International Chemical Workers Union Council* is analogous to this case because the Sixth Circuit held that the arbitrator there impermissibly looked at a subsequent CBA when asked to determine the parties' compliance with an award

issued under the previous agreement. 532 F.3d 405, 417-18 (6th Cir. 2008). We first note that the Sixth Circuit did not address the question whether a remedy could extend beyond the expiration of the CBA at issue. See *id*. at 414. In addition, the issue in *Totes* was different than the issues in our case. The Sixth Circuit held that the arbitrator impermissibly interpreted a subsequent CBA in the process of confirming whether the parties were complying with his original award reached under a prior CBA. *Id*. at 416. Here, we need not address the question whether a subsequent CBA may ever be used to inform the interpretation of the CBA at issue (or an award issued under that CBA), because our holdings here rest on the fact that the subsequent CBA in the present case explicitly eliminated Arbitrator Martin's power to interpret it and that he indeed interpreted the 2005 CBA in fashioning his award.

Prate also contends that the Union's violations continued into the period governed by the 2005 CBA and that the arbitrator properly determined a remedy based on those continuing violations. Arbitrator Martin explained, in his recitation of Prate's position: "When the 2005 negotiations concluded with an agreement effective on September 2005, the instant grievance had been filed and procedurally and substantively controlled the claim of Prate going forward. The violation charged was a continuing one, with the remedy requested also continuing." The arbitrator's apparent invocation of the "continuing violation" theory does not save the award. While we have determined that an arbitrator did not exceed his authority by characterizing a grievance as a series of

ongoing, related violations rather than a single incident, see *Monee*, 348 F.3d at 676-77, we have not approved of the use of a "continuing violation" theory to allow the arbitrator to expand the scope of his jurisdiction to contracts under which he has no authority. Cf. 348 F.3d at 676-77 (finding no reason to disturb the arbitrator's remedy for a continuing violation during the term of the CBA). While the D.C. Circuit, in *National Postal Mail Handlers*, may have upheld the arbitrator's use of the "continuing violation" theory to remedy grievances that should not have fallen within the scope of the relevant CBA, the arbitrator in that case was in fact interpreting the relevant CBA. Arbitrator Martin, in awarding damages for periods after the expiration of the 2001 CBA was not, and he had no authority to do so. Cf. *Nat'l Postal Mail Handlers*, 589 F.3d at 442-44. The district court permissibly reduced the damages award that extended past the expiration of the 2001 CBA. See *Trs. of Chi. Painters & Decorators Pension v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 789-90 (7th Cir. 2007).

With respect to the equitable portion of the award—that Prate be allowed to pay on a piecework basis until the Union enforces the MFN provision—the district court vacated this portion of the award because it was "imposed well after September 30, 2005, the expiration of the 2001 CBA. Thus, the Arbitrator had no authority to award it, or any relief, after that date." The parties did not separate the two parts of the award to address in the first instance the post-2001 CBA damages and secondly the equitable award. In some ways, for us, the equitable award is a more puzzling issue because it is not

time-specific; that is, its timing depends upon when the arbitrator happened to issue the equitable award. Had the arbitration proceeded more quickly (Prate filed its grievance in September 2003, the parties selected Arbitrator Martin in early 2004 and he issued an award in September 2008), Arbitrator Martin might have awarded this equitable relief prior to the 2001 CBA's expiration. However, here, the equitable order will be applied to periods which began after new CBAs that divested Arbitrator Martin of any jurisdiction to address grievances under them came into force. Therefore, on balance, we agree with the district court that it seems more appropriate to apply the same analysis to the equitable portion of the award as to the post-2001 CBA damages, and we now vacate the equitable portion of the award. Of course, the result here could have been different if, when the employers negotiated the new dispute resolution procedures, they insisted on addressing issues that might arise from this type of cross-CBA dispute.

Prate argues that a decision to limit Arbitrator Martin's remedial authority to the expiration of the 2001 CBA runs counter to the national policy in favor of arbitration and that, if our holding is taken to its logical extreme, parties in the middle of arbitration when the CBA at issue expires could take a mulligan and try their luck with another arbitrator. On the contrary, our holding does nothing to disturb parties' ability to resolve a grievance under an expired CBA. They simply must bring a grievance before an arbitrator who has jurisdiction over the CBA in force when the dispute arose.

### 3. The issue whether the arbitrator inappropriately adjusted wage rates is moot because the award of equitable relief is vacated.

The Union contends that when the arbitrator awarded Prate the ability to pay under a piecework formula, he was disregarding the contractual limits on his power by changing the wage scale. However, this argument is moot because we have affirmed the district court's decision to vacate the equitable portion of the award.

In its opening brief, the Union also argues that the arbitrator's damages award impermissibly altered the wage scale by allowing the employer to pay on a piecework basis. Prate responds that the arbitrator was simply exercising his authority to order a remedy and the Union already waived the hourly pay requirement for Prate's competitors so it was coming to the table with unclean hands. We have noted the arbitrator's broad remedial authority and the general presumption in favor of upholding arbitrators' awards. See *Dexter Axle*, 418 F.3d at 768; *Clear Channel*, 558 F.3d at 675. Applying these principles, we think it a stretch to argue that the arbitrator adjusted wage rates in violation of the terms of the CBA by ordering a retrospective damages remedy. Cf. *Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.*, 918 F.2d 1215, 1219-20 (5th Cir. 1990) (holding that an arbitrator did not exceed his authority in setting natural gas prices, even though the contract gave Tennessee the right to adjust the price whenever it wished).

### 4. The district court correctly dismissed the Union's argument that the arbitrator improperly relied on facts covered by the 2002 release.

The Union argues that any actions that occurred prior to the 2002 release should not have been considered by the arbitrator when determining the present dispute. The arbitrator agreed with the Union and specifically stated that he was only using the pre-2002 facts as background. The Union's reinstatement of this argument on appeal is meritless because it is based on an incorrect reading of the arbitrator's decision. The district court correctly dismissed the argument.

### 5. The arbitrator permissibly awarded attorneys' fees.

The Union contends that the arbitrator awarded attorneys' fees without authority because the CBA does not specifically discuss attorneys' fees. As the district court held, an arbitrator has ample discretion to formulate remedies including an indeterminate attorney fee award of this kind, and we see no reason to set aside the arbitrator's fee award. See, e.g., *Dexter Axle*, 418 F.3d at 768; *Clear Channel*, 558 F.3d at 675.

For the foregoing reasons, the district court's order is

AFFIRMED.