**COASTAL OIL OF NEW ENGLAND, INC., Plaintiff, Appellant,**

v.

**TEAMSTERS LOCAL A/W International Brotherhood of Teamsters, Defendant, Appellee.**

**No. 97–1950.**

United States Court of Appeals, First Circuit.

Heard Sept. 9, 1997.

Decided Jan. 23, 1998.

Alan S. Miller, with whom Stoneman, Chandler & Miller LLP, Boston, MA, was on brief, for appellant.

Christine L. Nickerson, with whom Matthew E. Dwyer and Dwyer & Jenkins, P.C., Boston, MA, were on brief, for appellee.

Before TORRUELLA, Chief Judge, CAMPBELL, Senior Circuit Judge, and LYNCH, Circuit Judge.

TORRUELLA, Chief Judge.

Although this appeal presents a somewhat novel question, the answer is more mundane.

Appellant employer Coastal Oil of New England, Inc., filed an Application to Vacate an arbitration award in the Superior Court of the Commonwealth of Massachusetts on the grounds that the arbitrator had exceeded his authority. Appellee labor organization Teamsters Local Union No. 25 A/W International Brotherhood of Teamsters removed the matter to the United States District Court for the District of Massachusetts. *See* 28 U.S.C. §§ 1441, 1331; 29 U.S.C. § 185(a). Both parties filed cross motions for summary judgment, whereupon the court ruled against appellant and denied vacation of the arbitration award. Instead, the district court granted appellee's request that the award be enforced. Final judgment was entered thereafter and this appeal followed.

Appellant operates three separate facilities in Massachusetts, including one in Revere and one in Chelsea. Although they are all represented for collective bargaining purposes by appellee, the employees in each of the three facilities belong to separate bar-

gaining units and are covered by discrete collective bargaining agreements.

Joseph Abruzzese, a yardman within the Revere bargaining unit, was injured in a work-related accident in 1991, forcing him to take a leave of absence, during which he received benefits under the Massachusetts Worker's Compensation Act. Mass. Gen. Laws ch. 152, § 1 *et seq.* In August 1995, when Abruzzese sought to return to work, no job openings were available in the Revere unit. Nevertheless, appellant and appellee reached an agreement that Abruzzese would be reinstated to the next available position. Subsequently, Abruzzese learned that a yardman position was available in the Chelsea unit, the same job that he had previously had in the Revere unit. He applied for that slot through his union, appellee. Appellant refused the request, contending that Abruzzese only had a right to reinstatement in the Revere unit. After appellant hired someone else to the Chelsea position, appellee filed a grievance pursuant to the Revere contract.

Eventually, the dispute was heard before an arbitrator. After hearing the evidence, the arbitrator concluded that the issue to be decided was "whether the Company violated the [Revere] Agreement when it refused to place Joseph Abruzzese ... in a position of yardman at the Company's Chelsea terminal. . . ." Thereafter, the arbitrator concluded that Article XIV, Section 10(a) of the Revere Agreement, which incorporated the Massachusetts Worker's Compensation Law, mandated the employment of Abruzzese at the open position in Chelsea. Appellant was thus ordered to reinstate him to the Chelsea position and to make him whole as to back pay and lost benefits.

Appellant's challenge to the district court's rulings stems from its contention that the arbitrator exceeded his authority under the Revere collective bargaining agreement by ordering the employment of a member of that unit into the Chelsea unit. As a corollary to that issue, appellant claims that the arbitrator lacked authority to interpret the Worker's Compensation Act.

▮ Labor arbitration is the product of the private will of voluntarily consenting parties. Thus, the starting point, and in a real sense the finishing one in this, as in most challenges to arbitration awards, is the language of the collective bargaining contract. Such language establishes the parameters of the arbitrator's authority.

We commence our quest for the answers to the issues raised by this appeal with a reading of Article XVIII of the Revere Agreement entitled "Grievance Procedure," which provides in Section 2, in effect, that in exchange for labor peace "during the life of this Agreement[,] ... any question of interpretation, enforcement, adjustment or grievance ... between the employer and the Union and his employees which cannot be adjusted[,] ... shall be referred ... to ... arbitration[,] ... [which] ... decision ... shall be final and binding upon both parties."

We next proceed to the specific provision upon which the arbitrator relied for his ruling, Article XIV, Section 10(a) of the Revere contract. It states that:

> The Company shall either carry worker's compensation or, in the event of an injury to an employee, shall provide said employee with the same benefits and payments and in the same manner as provided by the provisions of the Worker's Compensation Law (Massachusetts G.L., Chapter 152) and Amendments thereto, up to and including the date of the signing of this Agreement.

We thus come to Section 75A of the Massachusetts Worker's Compensation statute, which the arbitrator found applicable to the submitted grievance under the previously cited contractual provision, and which he interpreted to require that Abruzzese be reinstated to the Chelsea position notwithstanding his previous employment outside that unit. Section 75A reads as follows:

> Any person who has lost a job as a result of an injury compensable under this chapter shall be given preference in hiring by the employer for whom he worked at the time of compensable injury over any persons not at the time of application for reemployment employed by such employer; provided, however, that a suitable job is available. Actions may be filed under this

section with the superior court department of the trial court for the county in which the alleged violation occurred. An employer found to have violated this section shall be exclusively liable to pay to the employee lost wages, shall grant the employee a suitable job, and shall reimburse such reasonable attorney fees incurred in the protection of rights granted by this section as shall be determined by the court.

In the event that any right set forth in this section is inconsistent with an applicable collective bargaining agreement or chapter thirty-one, the collective bargaining agreement or said chapter thirty-one shall prevail.

■ Although we have often stated the following principle, due to the number of groundless appeals that have come before us challenging arbitration awards, it bears repeating that: "[j]udicial review of an arbitration award is among the narrowest known to the law." *Maine Cent. R.R. Co. v. Brotherhood of Maintenance of Way Employees*, 873 F.2d 425, 428 (1st Cir.1989). For courts "do not sit to hear claims of factual or legal error by an arbitrator[,] as an appellate court does in reviewing decisions of lower courts." *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). In fact, "[f]ederal court review of arbitral decisions is extremely narrow and extraordinarily deferential." *Service Employees Int'l Union v. Local 1199, N.E.*, 70 F.3d 647, 651 (1st Cir.1995).

■ "[A] court should uphold an award that depends on the arbitrator's interpretation of a collective bargaining agreement if it can find, within the four corners of the agreement, any plausible basis for that interpretation." *El Dorado Technical Servs., Inc. v. Unión General de Trabajadores de Puerto Rico*, 961 F.2d 317, 319 (1st Cir.1992). That a court would have decided an issue differently is not a basis for overruling an arbitrator if the arbitrator "even arguably acted within the scope of his authority." *Misco*, 484 U.S. at 38, 108 S.Ct. at 371.

■ Absent a claim that the award is against an explicit, well-defined, and dominant public policy, *see Service Employees*

*Int'l Union*, 70 F.3d at 652, the scope of review is limited to claims that the arbitrator's decision is: "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." *Local 1445 United Food and Commercial Workers Int'l Union v. Stop & Shop Cos.*, 776 F.2d 19, 21 (1st Cir.1985). And, of course, "[a]n arbitrator's view of the scope of the issue ... is entitled to the same ... deference ... normally accorded to the arbitrator's interpretation of the collective bargaining agreement itself." *Larocque v. R.W.F., Inc.*, 8 F.3d 95, 97 (1st Cir.1993). Based on these well-established principles, the outcome of this appeal is preordained.

■ Although the scope of the reinstatement remedy provided through an arbitral award is usually limited to the contractual bargaining unit from which the grievance arises, a contrary result is not unheard of where the parties have bargained to grant the arbitrator such power. *See supra.* The parties to the collective bargaining agreement, the same entities presently before us, voluntarily contracted to submit to final and binding arbitration any question of interpretation of that agreement, or any grievance involving employees. It cannot be seriously contended that the underlying controversy submitted to, and litigated before, the arbitrator does not concern both the interpretation of the collective bargaining agreement as well as a grievance involving an employee. How can the arbitrator, in determining whether appellant lived up to the contractual obligations mandated by Section 10(a) of Article XIV of the Revere Agreement, fail to address whether the provisions of the Massachusetts Worker's Compensation Law, incorporated into that agreement by Section 10(a), have been met?

The response to this question as well as to appellant's challenge to the arbitrator's authority to interpret the aforementioned Massachusetts statute is self-evident. Obviously, the arbitrator acted properly and within the scope of his delegated authority. We can perceive of no valid reason why the parties

could not also agree to have statutory rights enforced before an arbitral forum. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 35, 111 S.Ct. 1647, 1656–57, 114 L.Ed.2d 26 (1991)(holding ADEA claims to be arbitrable); *Bercovitch v. Baldwin Sch., Inc.,* 133 F.3d 141 (1st Cir.1998)(ADA claims subject to arbitration); *Patterson v. Tenet Healthcare, Inc.,* 113 F.3d 832 (8th Cir.1997) (extending *Gilmer* to Title VII claims); *Mago v. Shearson Lehman Hutton, Inc.,* 956 F.2d 932, 935 (9th Cir.1992) (extending *Gilmer* to Title VII claims); *Utley v. Goldman Sachs & Co.,* 883 F.2d 184, 186 (1st Cir.1989) (holding *inter alia* Title VII claims to be arbitrable); *cf. Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 238, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (holding Securities Exchange Act and RICO claims to be arbitrable); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 640, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (holding Sherman Act claims to be arbitrable).

A cursory reading of that statute leads to the inevitable conclusion that the arbitrator's ruling in this case was not only clearly within the powers granted to him in the collective bargaining agreement, it is substantially the remedy that the Massachusetts Superior Court would likely have felt required to grant Joseph Abruzzese given that the appellant is a single, unitary employer, for workman's compensation purpose. As a result, its trinary profile, for labor relations purposes, is presently irrelevant. We note that our views as to the legal soundness of the arbitrator's conclusions are largely gratuitous, for as previously stated, even an erroneous interpretation of the law by an arbitrator is not subject to judicial review if that authority has been delegated to the arbitrator, as it was in this case.

The decision of the district court is *AFFIRMED.* Costs are granted to appellee.