**ANR ADVANCE TRANSPORTATION COMPANY, Plaintiff–Appellant,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 710, Defendant–Appellee.**

No. 97–4075.

United States Court of Appeals, Seventh Circuit.

Argued May 29, 1998.

Decided Aug. 26, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 7, 1998.

Before CUMMINGS, RIPPLE and EVANS, Circuit Judges.

RIPPLE, Circuit Judge.

ANR Advance Transportation Company, Inc., brought this action under § 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). It sought vacation of an arbitrator's decision that had resolved a postmerger wage level dispute against ANR Advance and in favor of the International Brotherhood of Teamsters, Local No. 710 (the "Union"). ANR Advance later moved for summary judgment; the district court denied that motion and instead granted summary judgment, sua sponte, to the Union. ANR Advance now appeals. For the reasons that follow, we affirm the judgment of the district court.

## I

## BACKGROUND

### A. Facts

ANR Advance Transportation Company, Inc. ("ANR Advance") is a trucking company that was formed on November 5, 1995, upon the merger of two separate trucking companies. Specifically, Advance Transportation Company ("Advance") was absorbed by ANR Freight System, Inc. ("ANR Freight"), and the company was renamed ANR Advance to reflect the transaction.

Prior to the merger, both Advance and ANR Freight employed office and dock workers. In each company, both groups were represented by the Union. Moreover, in each company, there was a separate collective bargaining agreement ("CBA") with the Union for each of these two job classifications. These four CBAs had several similarities. Each was in effect from April 1, 1994, through March 31, 1998; each contained an Article 10 that governed the effect of a merger on the compensation of workers employed by the merging company. In pertinent part, that article provided:

If the minimum wage, hour and working conditions in the company absorbed differ from those minimums set forth in this Agreement, the higher of the two shall

Jeffrey L. Madoff (argued), Matkov, Salzman, Madoff & Gunn, Chicago, IL, for Plaintiff-Appellant.

Marvin Gittler (argued), Susan Brannigan, Asher, Gittler, Greenfield, Cohen & D'Alba, Chicago, IL, for Defendant-Appellee.

remain in effect for the members so absorbed.

R.1–1, Ex. A at 22.[1] This case involves the arbitrator's interpretation of this provision and the resulting wage levels to be paid to employees after the merger.

Although the CBAs had some similar provisions, they also had significant differences with respect to compensation and benefits. Although the minimum wage rates for both office and dock employees were the same, employees at ANR Freight were participants in a Wage Reduction–Job Security Plan ("ANR Freight Plan"). This Plan provided for a reduction of 15% in the wage rates contained in the CBAs. According to ANR Advance, this reduction in wages in the ANR Freight Plan was a quid pro quo for certain benefits pertaining to job security. The other premerger company, Advance, had in place Addenda to its CBAs which provided for rates of pay 10% lower than those provided in the CBAs. The parties dispute whether this 10% wage reduction in the Addenda, like the ANR Freight Plan, was in exchange for benefits. In any event, the effect of these provisions was that, before the merger, there was a 5% differential between the hourly wages paid to Advance employees and ANR Freight employees; Advance employees received the higher comparative hourly wage rates.

Following the merger, ANR Advance determined that it would pay all of its office and dock employees in accordance with the CBAs between ANR Freight (the surviving company) and the Union. Consequently, ANR Advance paid the former Advance employees 5% less than they had been receiving. However, these employees, although now receiving a lower hourly wage, became eligible for the benefits provided under the Wage Reduction–Job Security Plan. Nevertheless, the former Advance employees filed grievances and asserted that their pay had been reduced in contravention of Article 10 of their CBAs.

This dispute went to arbitration. The arbitrator determined that ANR Advance had breached the CBAs by paying the former Advance employees hourly wages less than they had been receiving prior to the merger. Article 10 required a comparison of "wage, hour and working conditions." In the arbitrator's view, the hourly rates to be compared were not the "unreduced" wages contained in the CBAs, but the wage rates in effect because of the ANR Freight Plan and the Addenda that modified the CBAs' wage terms. See R.1–1, Ex. G at 28, 32.[2] The arbitrator therefore determined that the Advance employees' premerger wages had been higher than those paid to the ANR Freight employees. Accordingly, he held that the Advance employees were entitled to their premerger wages because the CBA provisions stated that "the higher of the two shall remain in effect for the members ... absorbed." ANR Advance was ordered to pay the former Advance employees the difference between their current and former wages from the time of merger to the time of the arbitration award; it was further ordered to pay the premerger wages to those employees for the remainder of the contract.

## B. Proceedings in the District Court

ANR Advance then filed this action to vacate the arbitrator's award. In due course, it filed a motion for summary judgment. The district court reviewed the arbitrator's decision and determined that, in making his decision, the arbitrator had interpreted the CBAs' language and that the decision therefore drew its essence from the CBAs. Although the court believed that ANR Advance's position with regard to the proper interpretation of the CBAs and to the consequent treatment of the wage comparison was rational, the court also determined that the

---

1. The CBAs covering the office employees for both Advance and ANR Freight have this identical language. See R.1–1, Ex. A at 22 & Ex. C at 22. The provisions in the CBAs pertaining to the dock employees for both Advance and ANR Freight are identical to each other, but differ from the quoted language to the extent that the term "members" is substituted with "men." See R.1–1, Ex. B at 19 & Ex. D at 19.

2. In this regard, the arbitrator expressly found that "[t]he clear meaning of 'minimum wages' [sic] in Article 10, Section 17, quoted above, is the wages paid, not the 'paper rates' contained in [the CBAs] before the Addenda." R.1–1, Ex. G at 29.

arbitrator's position was rational and not in excess of his authority. The district court also concluded that the arbitrator was entitled to disregard the decision of another arbitrator that had indicated that the 15% wage reduction would apply to all employees of the merged company, ANR Advance. The decision in that case, noted the court, applied to different contracts and, because it was sparse in its reasoning, "did not give any insight into the rationale for the decision or the specific provisions on which the decision was based." R.24 at 9.

The district court therefore denied ANR Advance's motion for summary judgment and instead granted, sua sponte, summary judgment to the Union.

## II

## DISCUSSION

### A.

 ANR Advance now challenges the district court's decision to grant summary judgment in favor of the Union. We review the district court's grant of summary judgment de novo, applying the same standard to evaluate the arbitrator's decision as that employed by the district court. *See Amax Coal Co. v. United Mine Workers of Am., Int'l Union,* 92 F.3d 571, 574 (7th Cir.1996); *Jasper Cabinet Co. v. United Steelworkers of Am., AFL–CIO–CLC, Upholstery & Allied Div.,* 77 F.3d 1025, 1026 (7th Cir.1996). In that review, we construe the facts of record and all inferences that may be drawn from them in the light most favorable to ANR Advance. *See Jasper Cabinet Co.,* 77 F.3d at 1026. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "When the material facts are not in dispute, as in this case, the sole question is whether the moving party [the Union] is

entitled to judgment as a matter of law." *Cozzie v. Metropolitan Life Ins. Co.,* 140 F.3d 1104, 1107 (7th Cir.1998) (internal quotations omitted).

 Litigants attempting to overturn an arbitrator's award face a daunting challenge. *See Amax Coal Co.,* 92 F.3d at 575 ("It is well established that judicial review of arbitration awards under collective bargaining agreements is extremely narrow." (citing cases)). The Supreme Court has explained that when "[c]ollective-bargaining agreements ... provide grievance procedures to settle disputes between union and employer with respect to the interpretation and application of the agreement and require binding arbitration for unsettled grievances," the "courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). The Supreme Court went on to state that:

> [T]he arbitrator's award settling a dispute ... must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*Id.* at 38, 108 S.Ct. 364. Since the Court's reconfirmation [3] of this standard in *Misco,* we have elaborated further on its application. We have explained that " '[i]t is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract' that the award can be said not to draw its essence from the [CBA]." *Jasper Cabinet Co.,* 77 F.3d at 1028 (quoting *Ethyl Corp. v. United Steelworkers of Am.,* 768 F.2d 180, 184–85 (7th Cir.1985), *cert. denied,* 475 U.S. 1010,

3. The Court's statement derives from its earlier decision in *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In that case, the Court stated: "[A]n arbitrator is confined to interpretation and application of the collective bar-

gaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement." *Id.* at 597, 80 S.Ct. 1358.

106 S.Ct. 1184, 89 L.Ed.2d 300 (1986)). Therefore, in this context, our role is not to substitute our judgment for the arbitrator or even to determine that the arbitration was legally or factually in error; instead, we must limit our inquiry to whether the arbitrator reached his decision through an interpretation of the CBAs. If the arbitrator attempted to give meaning to the terms of the contract, then the award drew its essence from the CBAs and we shall not disturb it. Moreover, "[w]e resolve any reasonable doubt about whether an award draws its essence from the collective bargaining agreement in favor of enforcing the award." *Polk Bros., Inc. v. Chicago Truck Drivers, Helpers & Warehouse Workers Union (Independent)*, 973 F.2d 593, 597 (7th Cir.1992).

### B.

■ ANR Advance acknowledges, as it must, the difficult nature of its challenge. Nevertheless, it endeavors to establish that the arbitrator effectively ignored the language of the CBAs and therefore that his decision does not draw its essence from the CBAs. ANR Advance states simply the arbitrator's task: He was required, under Article 10, to compare the "minimum wage, hour and working conditions" at Advance to the minimums set forth in ANR Freight's agreement with the Union, to determine if those minimums differed; if there was a difference, he was to apply the higher of the two to the absorbed employees—the former Advance employees. In ANR Advance's view, the arbitrator grossly erred in this analysis; he simplistically compared only the wage rates and did not consider the "hour and working conditions" to determine whether the Advance employees were actually paid more than the ANR Freight employees during the premerger period. By relying only on the hourly wage rate, and ignoring the value of the extra benefits that had been negotiated through the various modifications of the CBAs, the arbitrator concluded that the Advance employees were being paid 5% higher wages than ANR Freight employees.

ANR Advance suggests two alternative lines of reasoning that the arbitrator could have employed in fulfilling his task. In its view, either would have been justified under the language of the CBAs. First, ANR Advance submits that the arbitrator should have realized that the "wage, hour and working conditions" at ANR Freight were actually higher than those at Advance because the ANR Freight employees' wages had been reduced by 15% in exchange for benefits contained in the Wage Reduction–Job Security Plan. If the arbitrator had considered these benefits along with the wage rates, reasons ANR Advance, he would have concluded that ANR Freight employees were paid 10% more than the Advance employees. This argument assumes that the Advance Addenda to the CBAs providing for wages 10% lower than those set forth in the CBAs were not negotiated to effectuate the same trade-off as the one that had motivated the ANR Freight reduction. Indeed, ANR Advance maintains that the Advance employees simply were paid 10% less and that there was no reduction in the base wage rate in exchange for provisions favorable to the employees contained in the Addenda. Therefore, it reasons, although the Advance employees' hourly wages were 5% higher than ANR Freight's on a straight comparison, the value of the Wage Reduction–Job Security Plan was 15% of the ANR Freight employees' wages. Therefore, in its view, the ANR Freight total compensation package was 10% greater than that paid by Advance.

In the alternative, ANR Advance submits that, even if the Addenda in the Advance CBAs were put on the same footing as the ANR Freight Plan, the arbitrator's result cannot be justified. In that case, the value of the Addenda was the 10% reduction in Advance wages from the base wages. The Advance hourly wages plus the value of the Addenda must then be compared to the ANR Freight wages plus the value of the ANR Freight Plan. Under this comparison, the employees at each company actually were receiving the same levels of "wage, hour and working conditions." Because the arbitrator did not account for the values of the quid pro quos, asserts ANR Advance, as required under the language of Article 10, it cannot be said that the arbitrator's award draws its essence from the CBAs.

We, like the district court, acknowledge that ANR Advance's suggested analyses are

not illogical ones. However, at the same time, we cannot say that the arbitrator's decision does not draw its essence from the CBAs. The arbitrator thoroughly reviewed the various CBAs, the Advance Addenda and the ANR Freight Wage Reduction–Job Security Plan in his decision. The arbitrator fully addressed the contentions of the parties, and then turned to the language of Article 10 of the CBAs to determine how to resolve the dispute. As an initial, and expressly crucial point, the arbitrator determined that he would not simply compare the unreduced wage rates set forth in the CBAs in his comparison of the "minimum wage" that was paid by each company. Instead, the arbitrator interpreted that language in Article 10 to mean that he had to consider, in his comparison of the "minimum wage, hour and working conditions" the actual wages that were being paid to the ANR Freight and Advance employees in light of the Addenda and the ANR Freight Plan that had modified the base wage rates in the CBAs. Moreover, the arbitrator, in his review of the documents, was not persuaded that the ANR Freight Plan was on a different footing than the Advance Addenda. Therefore, he refused to follow ANR Advance's suggestion that the value of the quid pro quos of the ANR Freight Plan was appropriate to consider in addition to the ANR Freight hourly wage rates, but that the Advance Addenda provisions reducing the Advance employees' wages by 10% were not.

In the arbitrator's view, then, the appropriate comparison of wages was to take place between the hourly wages at Advance reduced by 10% per the Addenda and the wages at ANR Freight reduced by 15% per the Wage Reduction–Job Security Plan. Accordingly, he found that the Advance wages were 5% higher and that, under Article 10 of the CBAs, the parties had contemplated that

the Advance employees would be entitled to those wages postmerger. The arbitrator recognized that his finding would still entitle the former Advance employees to the benefits under the ANR Freight Plan, but disagreed with ANR Advance that this was an incongruous result.[4] Instead, he found that the parties contemplated that such a result could occur in light of Article 10 of the CBAs as well as the "Maintenance of Standards" provisions.[5]

We believe that it is clear that the arbitrator's decision and award draws its essence from the CBAs. Although we may not have reached the same conclusions as the arbitrator, it is evident that he specifically addressed the contentions of the parties and interpreted the terms of the CBAs as he believed was required by principles of contract interpretation. He determined that the appropriate wage comparison for purposes of Article 10 of the CBAs was between the wages as reduced by the Addenda and the ANR Freight Plan that modified the terms of the CBAs. This interpretation of the contract language was within his authority as an arbitrator. We therefore cannot say that the arbitrator failed to interpret the CBAs in reaching his conclusion. He clearly based his holding on his interpretation of the language at issue; that is all that needs to be determined in this setting.

We also do not think that the remedy the arbitrator chose can be characterized as punitive. The remedy that the arbitrator fashioned comports with his interpretation of the CBAs. Nor do we believe that the arbitrator's decision must be vacated on the ground that it disregarded a different arbitrator's decision that, according to ANR Advance, would have mandated a different conclusion. That other arbitration decision resolved a

---

**4.** ANR Advance submits that this result allows the former Advance employees essentially to obtain 105% of the pie. The Advance employees still get their prior wages, but are entitled to the benefits that the ANR Freight employees had to give up 15% of their wages to obtain. This, claims ANR Advance, is inequitable and is punitive in nature. The district court, however, found that this result was the logical result of the arbitrator's interpretation of the CBAs.

**5.** The CBAs contain a provision that appears to correlate to the wage preservation clause in Arti-

cle 10. See, e.g., R.1–1, Ex. A at 24, under the heading "Maintenance of Standards":

Section 1. The Employer agrees that all conditions of employment in his individual operation relating to wages, hours of work, overtime differentials and general working conditions shall be maintained at not less than the highest standards in effect at the time of the signing of this Agreement, and the conditions of Employment shall be improved wherever specific provisions for improvement are made elsewhere in this Agreement. . . .

dispute regarding whether the 10% wage reduction provided in the Advance Addenda or the 15% wage reduction provided in the ANR Freight Plan would apply at the merged company, ANR Advance. That arbitrator, William Hobgood, determined that the "fifteen (15) percent wage reduction/profit sharing program currently in place at ANR shall be the plan in place at the newly merged company." R.10, Ex. 8. ANR Advance maintains that the arbitrator in this case should have given deference to the Hobgood decision on the ground that the CBAs in place at Advance and ANR Freight incorporate decisions made under the National Master Freight Agreement, a contract apparently governing the working conditions nationwide between Advance and ANR Freight and their employees (except those employees subject to the separate CBAs at issue here).

The arbitrator refused to defer to the Hobgood decision on the ground that the issue before him was different than that decided by Hobgood, that different parties were involved in this case and that the Hobgood decision lacked any statements regarding the reason for the conclusion it reached or even what provisions of the CBAs it considered in reaching its conclusion. After reviewing the summary disposition of the two-paragraph Hobgood decision, we agree that the arbitrator in this case was not bound to give deference to that decision. It simply is not clear from that decision what the precise issue being arbitrated was or what the rationale for its outcome might be. We do not think, therefore, it can be said that the arbitrator's decision in this case fails to draw its essence from the CBAs because it disregarded an arbitrator award resolving a dispute between different parties involving unascertained language in other CBAs.

### Conclusion

The arbitrator's award in this case derives directly from its interpretation of the CBAs at issue. Therefore, we agree with the district court that the arbitration decision draws its essence from the CBAs and affirm its decision to grant summary judgment in favor of the Union.

AFFIRMED.