**AMERICAN POSTAL WORKERS UNION, AFL–CIO, MILWAUKEE LOCAL, Plaintiff–Appellant,**

v.

**Marvin T. RUNYON, Jr. and United States Postal Service, Defendants–Appellees.**

No. 98–3289.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 21, 1999.

Decided July 26, 1999.

Alvin R. Ugent, Robert E. Haney (argued), Podell, Ugent & Cross, Milwaukee, WI, for Plaintiff–Appellant.

Alice L. Covington (argued), United States Postal Service, Washington, DC, for Defendants–Appellees.

Before BAUER, COFFEY, and MANION, Circuit Judges.

MANION, Circuit Judge.

The parties submitted to an arbitrator a dispute about the Union members' right to unpaid vacation leave. The arbitrator sided with the United States Postal Service in holding that under the national agreement, the Postal Service may grant or deny unpaid vacation leave at its discretion. The Union asked the district court to vacate the arbitrator's decision, arguing that he had exceeded his authority. Finding that the arbitrator acted within the bounds of his authority, the district court granted summary judgment for the Postal Service. We affirm.

**834**

## I.

The American Postal Workers Union represents certain clerical workers of the Postal Service. These parties have operated under a national collective bargaining agreement since at least 1981. The CBA allows them to bargain locally on twenty-two issues, including unpaid vacation leave. Since 1981, a Local Memorandum of Understanding ("LMOU") governed the Postal Service and certain postal workers in the Milwaukee, Wisconsin area. This LMOU previously had been interpreted in an arbitration proceeding (not directly at issue here) as requiring the Postal Service to permit employees to take unpaid leave whenever they had scheduled annual leave but had previously exhausted their paid leave balance. By 1996, however, the Postal Service had become concerned about an excessive number of employees taking unpaid leave after exhausting their paid leave balances. Its main concern was that this liberal leave policy resulted in increased costs.[1]

■ In March and April 1996, in an attempt to alleviate this problem, the Postal Service negotiated with the Union for changes in the 1996 LMOU which would allow the Postal Service to refrain from deciding whether to grant leave until one week before the employees' scheduled vacations. This caveat would permit the Postal Service to approve vacations only after determining whether the employee in question had paid leave available. The Service also sought unfettered discretion to deny any requests that leave be granted without pay, thereby reducing the costs associated with unpaid leave. After the parties reached an impasse on this issue, in accordance with the terms of the CBA, they submitted the issue to interest arbitration.[2] The submitted question was: "Should the LMOU be changed to reflect Management's proposal with respect to Article 10, Section 4.C [the leave section] or should the LMOU remain the same?"

The arbitrator declined to leave the LMOU as he found it, but also refused to adopt the Postal Service's proposal in its entirety (because he found that it conflicted with the CBA). Instead, the arbitrator elected to add a footnote to Article 10, Section 4.C which states: "An employee who has no leave to cover his/her vacation pick/choice during the choice vacation period may be granted LWOP [leave without pay] to cover the absence. The granting of LWOP is a matter of administrative discretion." The arbitrator believed that this language properly reflected the discretion given to the Postal Service by the CBA. It also effectively gave the Postal Service the remedy it sought, but without using the precise amendment proposed by the Service.

On August 6, 1997, the Union filed an application to vacate the arbitrator's decision on the ground that the arbitrator exceeded his authority. Specifically, the Union contended that the arbitrator had only two options: (1) adoption of the Postal Service's proposed change *in its entirety;* or (2) leaving the LMOU unamended. Thus, the Union argues that the arbitrator exceeded his power by choosing a third approach in which the Postal Service's position (but not precisely its proposed language) was adopted. There were no dis-

---

1. Although the leave was unpaid, the Postal Service continued to provide health insurance and other benefits during the leave period. The parties dispute the extent of these costs. The Union believes that each hour of unpaid leave costs the Postal Service about $1.52.

2. " 'Interest arbitration' in labor matters involves the submission of disputes over terms for a new collective bargaining agreement [or the like] to an independent third party who determines what the *new* terms of the con-

tract will be. Interest arbitration should be distinguished from 'grievance arbitration,' which involves the submission of disputed interpretations of an existing collective bargaining agreement to an independent third party who determines what construction the existing term should be given." *Chicago Typographical Union No. 16 v. Chicago Newspaper Publishers' Ass'n,* 853 F.2d 506, 509 n. 6 (7th Cir.1988).

puted facts, so both parties moved for summary judgment. Finding that the arbitrator's decision was based on the CBA and was in accordance with his power, the district court granted summary judgment for the Postal Service. The Union appeals.

## II.

■ We review the summary judgment *de novo*, applying the same standards to evaluate the arbitrator's decision as the district court. *ANR Advance Transp. Co. v. International Bhd. of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir.1998). Judicial review of arbitration awards under collective bargaining agreements is extremely limited. *Amax Coal Co. v. United Mine Workers of Am., Int'l Union*, 92 F.3d 571, 575 (7th Cir. 1996). Under the Federal Arbitration Act, we may vacate an arbitration award only in narrowly defined cases, one of which exists when an arbitrator's award exceeds his authority. 9 U.S.C. § 10(a)(4). "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Thus, when a party to the arbitration contends that the arbitrator acted beyond his designated authority, our task is limited to determining whether the arbitrator abided by the contractual limits placed on him to decide the dispute. *Id.* The parties may limit the arbitrator's contractual authority to address a dispute through: (1) the contract; and (2) the issue submitted to the arbitrator. Thus, in assessing whether an arbitrator's award was within the scope of his power, courts must first determine whether the award "draws its essence from the contract." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). "[I]t is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract that the award can be said not to draw its essence from the collective bargaining agreement." *Jasper Cabinet Co. v. United Steelworkers of Am.*, 77 F.3d 1025, 1028 (7th Cir.1996) (citation and internal quotations omitted). We resolve any reasonable doubt about whether an award draws its essence from the collective bargaining agreement in favor of enforcing the award. *ANR Advance Transp. Co.*, 153 F.3d at 778.

■ On another level, an arbitrator's authority is also limited by the actual issue submitted by the parties. *First Options of Chicago, Inc.*, 514 U.S. at 945, 115 S.Ct. 1920; *Sunshine Mining Co. v. United Steelworkers of Am.*, 823 F.2d 1289, 1294 (9th Cir.1987). "Parties to an arbitration may stipulate the issues they want determined and increase or limit the arbitrator's contractual authority by their express submission." *Hill v. Staten Island Zoological Soc'y, Inc.*, 147 F.3d 209, 214 (2d Cir.1998). Thus, a reviewing court must also determine whether the arbitrator's decision went beyond the scope of the issue submitted. *Kozera v. Westchester–Fairfield Chapter of Nat'l Elec. Contractors Ass'n, Inc.*, 909 F.2d 48, 52 (2d Cir.1990); *see International Union of Operating Eng'rs, Local No. 841 v. Murphy Co.*, 82 F.3d 185, 187 (7th Cir.1996) ("Generally, arbitrators should limit their rulings to those issues the parties have actually submitted for arbitration."). In doing so, we give great deference to the arbitrator's understanding of the parameters of the issues presented for arbitration. *Madison Hotel v. Hotel & Restaurant Employees, Local 25*, 144 F.3d 855, 857 (D.C.Cir.1998); *Coastal Oil of New England, Inc. v. Teamsters Local*, 134 F.3d 466, 469 (1st Cir.1998); *Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc. of Ariz.*, 84 F.3d 1186, 1190 (9th Cir.1996). The arbitrator's interpretation of the scope of the issue must be upheld so long as it is rationally derived from the parties' submission. *Richmond, Fredericksburg &*

**836**

*Potomac R.R. Co. v. Transportation Communications Int'l Union*, 973 F.2d 276, 280 (4th Cir.1992). It is generally presumed that an arbitrator's authority is broad and "courts expansively interpret the scope of an arbitrator's delegated authority." *Kozera*, 909 F.2d at 53. Furthermore, we are mindful that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Kozera*, 909 F.2d at 53.

 Here, the arbitrator was faced with the issue of whether he should amend the LMOU or leave it intact. After examining the CBA and prior arbitration decisions construing it, the arbitrator determined that the Postal Service's proposed amendment to the LMOU was not in accordance with the CBA, and thus had to be rejected. At the same time, the arbitrator reasoned that the CBA called for an amendment of the LMOU, so that the parties understood that granting leave without pay was within the Postal Service's sound discretion. Because this view comports with the CBA, and the Union has not shown that the CBA precludes such an interpretation, we cannot say that the award failed to derive its essence from the CBA.[3]

As to whether the arbitrator reached an issue not encompassed in the question submitted, we initially note that the parties certainly were free to limit the arbitrator to adopting only two courses of action (or any other number). But the arbitrator interpreted the issue framed by the parties as encompassing more than a choice between adopting the Postal Service's proposed amendment in its entirety and doing nothing. We owe the arbitrator's decision on this matter great deference. *See Richmond, Fredericksburg & Potomac R.R. Co.*, 973 F.2d at 280. The arbitrator understood from the way the issue was stated ("Should the LMOU be changed to reflect Management's proposal ....") that he was empowered to amend the LMOU so long as any changes were in accordance with the Postal Service's proposal. As long as he abided by this limitation, the arbitrator was free to grant the relief he saw fit. Under a reasonable interpretation of the issue as the parties stated it, the arbitrator's options included the one he exercised here: adopting language which reflected the spirit of the Postal Service's proposed amendment, but which did not utilize its precise language. We, therefore, defer to the arbitrator's reasonable interpretation of the issue and reject the Union's narrow reading and the limitation on the arbitrator's authority that this reading entails. Accordingly, because the arbitrator's decision drew its essence from the CBA and was within the parameters of the submitted issue, there is no basis to vacate his decision. *See ANR Advance Transp. Co.*, 153 F.3d at 778. AFFIRMED.

---

**3.** The Union also argues that the arbitrator failed to find a necessary prerequisite to amending the LMOU: that the practice of granting liberal leave without pay placed an unreasonable burden on the Postal Service. The arbitrator did, however, discuss the burden that the policy placed on the Postal Service, and a finding of unreasonableness was implicit in his decision to modify the LMOU. Regardless, we have said on many occasions that "an arbitrator is simply not required to state the reasons for his decision." *Geneva Securities, Inc. v. Johnson*, 138 F.3d 688, 692 (7th Cir.1998). Furthermore, mere ambiguity in the opinion accompanying the award is not grounds for vacating it. *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Thus, this argument provides no basis for reversing the district court.