In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3208

Northern Indiana Public Service Company,

Plaintiff-Appellant,

v.

United Steelworkers of America,
AFL-CIO-CLC, and United Steelworkers
of America, Local Union 12775,

Defendants-Appellees.

Appeal from the United States District Court for
the Northern District of Indiana, Hammond Division.
No. 99 C 598--Andrew P. Rodovich, Magistrate Judge.

Argued February 26, 2001--Decided March 12, 2001


  Before Bauer, Posner, and Kanne, Circuit
Judges.

  Bauer, Circuit Judge.  The parties, an
employer and a union, entered into a
collective bargaining agreement ("CBA")
directing any dispute arising from the
CBA to find resolution in arbitration.
Such dispute resolution was undertaken
when the parties disagreed over the
particulars of a contract negotiated
under the CBA known as the "Productivity
Reward Plan" ("PRP"). The PRP was a
carrot designed to increase productivity
and reduce costs by doling out yearly
bonuses to employees in addition to their
salary based on the employer's stock
earnings per share and pre-tax operating
income. At the heart of the PRP was a
chart. This chart comprised two multi-
matrix grids illustrating how bonuses
were to be calculated. The first grid
lists multiple earnings per share totals
with corresponding percentages indicating
the bonus to be paid if that total was
realized. The second grid lists various
pre-tax operating income totals with
corresponding percentages indicating the
bonus to be paid if that total was
realized. The 1997 chart, at issue here,
appears in the record as follows:

INCENTIVE POOL CALCULATION

Earnings Per Share [in dollars and cents]

Target

| 2.88 | 2.93 | 2.98 | 3.03 | 3.08 | 3.13 | 3.18 |
|------|------|------|------|------|------|------|
| 0.0  | 1.0  | 2.0  | 3.0  | 4.0  | 5.0  | 6.0  |

Pre-Tax Operating Income--Millions

Target

| 346 | 352 | 358 | 364 | 370 | 376 | 382 |
|-----|-----|-----|-----|-----|-----|-----|
| 0.0 | 1.0 | 2.0 | 3.0 | 4.0 | 5.0 | 6.0 |

In 1997, the company's pre-tax operating income literally went off the chart. A good year for the employer meant a good year for bonuses. From this prosperity, a question rose like phoenix from the ashes--if the pre-tax operating income went off the chart would the bonuses go off the chart as well? The earnings per share in 1997 was $3.08 (clearly on the chart), while the pre-tax operating income totaled over $391 million. The highest pre-tax operating income total on the chart was $382 million. Since a significant chunk of change was at stake, a disagreement not shockingly arose between the parties as to whether the PRP provided for higher bonuses when either the stock earnings per share or pre-tax operating income amount went higher than that memorialized on the chart. The employer said the PRP capped bonuses at the amount listed at the farthest right-hand corner of each matrix; the union said the PRP provided for no cap and the parties had agreed that bonuses would be adjusted upward in the event either the stock earnings per share or pre-tax operating income amount went beyond the chart.

The dispute was submitted to arbitration. Finding that the PRP was not capped, the arbitrator entered an award in favor of the union. The employer sought vacation of the award under sec. 301 of the Labor Management Relations Act, 29 U.S.C. sec. 185, and the union counterclaimed to enforce it. On cross-motions for summary judgment, the Magistrate Judge granted the union's motion to enforce the award. The employer now appeals to us for relief.

We review the district court's grant of

summary judgment de novo, "applying the same standards to evaluate the arbitrator's decision as the district court." American Postal Workers Union v. Runyon, 185 F.3d 832, 835 (7th Cir. 1999). "Judicial review of arbitration awards under [CBAs] is extremely limited." Id. We are empowered to vacate an award only if the arbitrator exceeded his or her authority. See id. Such arbitral authority is born in contract, thereby limiting our review to examining whether the arbitrator exceed this contractual authority. See id. This examination entails determining whether the award "draws its essence from the contract." Id. "'[I]t is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract that the award can be said not to draw its essence from the [CBA].'" Id. (quoting Jasper Cabinet Co. v. United Steelworkers of Am., 77 F.3d 1025, 1028 (7th Cir. 1996)); see Amax Coal Co. v. United Mine Workers of Am., 92 F.3d 571, 575 (7th Cir. 1996) (explaining that the arbitrator "does not sit to dispense his own brand of industrial justice," rather he or she must undertake the task of contract interpretation); Chicago Typographical Union v. Chicago Sun-Times, 935 F.2d 1501, 1505 (7th Cir. 1991) ("The arbitrator is not free to think or to say, 'The contract says X, but my view of sound policy leads me to decree Y.'"). In other words, the arbitrator cannot dress his policy desires up in contract interpretation clothing. See Ethyl Corp. v. United Steelworkers of Am., 768 F.2d 180, 187 (7th Cir. 1985) ("This is not to say that simply by making the right noises--noises of contract interpretation--an arbitrator can shield from judicial correction an outlandish disposition of a grievance."). Thus, we will vacate only if there is "'no possible interpretive route'" to the award. Amax Coal, 92 F.3d at 576 (quoting Arch of Illinois, 85 F.3d at 1293; Chicago Typographical, 935 F.2d at 1506). "We resolve any reasonable doubt about whether an award draws its essence from the [CBA] in favor of enforcing the award." Runyon, 185 F.3d at 835. All in all, as long as the arbitrator engaged in bone fide contractual interpretation, we are without power to vacate even if we believe the award was factually or legally incorrect. See ANR Advance

Transp. Co. v. Intern. Bhd. of Teamsters, 153 F.3d 774, 778 (7th Cir. 1998).

The district court held that given the limited judicial review of arbitration awards, the employer failed to demonstrate that the arbitrator's award must be rejected as a matter of law. The district court examined the arbitrator's reasoning to determine whether it drew its essence from the contract. The arbitrator studied the PRP and discovered that it allowed for interpolation, which meant that if either the earnings per share or pre-tax operating income total fell between the amounts listed in two boxes, bonuses would be adjusted upward to a percentage between the two boxes. The arbitrator found that the PRP expressly provided a floor for bonuses, but was silent as to a cap. To clear up any ambiguity created by the silence, the arbitrator examined extrinsic evidence, which included oral and written negotiations in forming the PRP. The arbitrator took note that during some presentations to the union about the PRP, the employer's representatives led the union to believe that bonuses would be raised if either the stock earnings per share and pre-tax operating income amount went above the chart. The arbitrator found that the union had consistently proposed contract language stating that the PRP would have no cap, but the employer never expressly responded to these proposals. The arbitrator also considered evidence that there was express language of a cap in similar plans between the employer and senior management, management, corporate, and hourly workers, but that such express language was absent from the PRP. These factors led the arbitrator to reason that if the employer had intended to cap the bonuses it knew how to do so, and since it did not, no cap existed. The district court was content that the arbitrator's award was well-reasoned and based on the contract.

The employer, however, contends that the arbitration award did not draw its essence from the contract because the arbitrator imposed his own brand of industrial justice by ignoring the plain and unambiguous language of the PRP in order to add a term (which the CBA expressly prohibited any and all arbitrators from doing) that the union

had failed to secure during negotiations. The employer's argument is that the chart clearly indicates that a cap exists at the farthest right-hand boxes. This is corroborated by the fact that there is no method provided in the PRP to calculate bonuses beyond the right-hand boxes.

We agree with the district court that the arbitrator engaged in contract interpretation. And, although the arbitrator was not empowered under the CBA to add terms to the PRP, arbitrators are empowered to fill gaps left in contracts. See Jasper Cabinet, 77 F.3d at 1029 ("[W]e have held that 'contracts have implied as well as express terms, and the authority of the arbitrator to interpret a [CBA] includes the power to discover such terms.'") (quoting Ethyl Corp., 768 F.2d at 185). In its appellate brief, the employer has persuasively argued that the arbitrator's interpretation may well have been unsound. This is not enough. "[A]ll this just amounts to saying that the arbitrator may have been wrong, maybe even clearly wrong; it does not show that he was doing something other than interpreting the contract." Ethyl Corp., 768 F.2d at 185. "[S]o long as the award is based on the arbitrator's interpretation--unsound though it may be--of the contract, it draws its essence from the contract." Id. at 184; see Dreis & Krump Mfg. Co. v. Int'l Assoc. of Machinists & Aerospace Workers, 802 F.2d 247, 253 (7th Cir. 1986) ("But an arbitrator's award cannot be set aside just because the arbitrator may have interpreted the [CBA] incorrectly."). The employer has not convinced us that the arbitrator's reasoning was not a possible interpretive route.

After the arbitrator rendered its award in this case, another arbitrator decided a case involving the same PRP brought by the clerical workers union against the same employer. The second arbitrator found that the arbitrator in this case had properly engaged in contract interpretation. However, the second arbitrator believed that given the record, two interpretations were possible--one is that a cap existed and another is that no cap existed. The second arbitrator opted for the former, holding in favor of the employer. The second arbitrator found a cap based on

the fact that the employer's silence regarding the union's proposals for no cap constituted a rejection of those proposals. He also found the other plans were substantially different than the PRP because the cap in those plans were within the chart, and had nothing to do with capping bonuses beyond the chart.

The employer asks us to vacate the arbitrator's award in this case and credit the second arbitrator's award. We decline this invitation. While the awards are opposite in interpreting the same issue involving different bargaining units, we concur with the second arbitrator's statement that both awards draw their essence from the contract. See, e.g., Connecticut Light & Power Co. v. Local 420, Int'l Bhd. of Elec. Workers, 718 F.2d 14, 20 (2d Cir. 1983). Further, we see no compelling reason to accept this invitation because the dispute here concerns only the 1997 bonus payout, and will likely have limited future ramifications for the parties as the CBA and PRP were up for renegotiations in 1999.

Therefore, since we agree that the arbitration award in this case drew its essence from the PRP, the district court's decision to enter summary judgment enforcing the award is AFFIRMED.