# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 02-3656

MONEE NURSERY & LANDSCAPING COMPANY,

*Plaintiff-Appellant,*

v.

INTERNATIONAL UNION OF OPERATING ENGINEERS,
LOCAL 150, AFL-CIO,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 571—**Charles R. Norgle, Sr.,** *Judge.*

———————

ARGUED FEBRUARY 25, 2003—DECIDED NOVEMBER 7, 2003

———————

Before POSNER, COFFEY, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Monee Nursery & Landscaping Company ("Monee") brought suit in federal court pursuant to the Labor Management Relations Act, 29 U.S.C. § 185, seeking to vacate an arbitrator's decision that Monee violated a collective bargaining agreement ("CBA") with International Union of Operating Engineers, Local 150, AFL-CIO ("Local 150"). The district court ruled that the arbitrator acted within his authority when he found Monee improperly used non-union members to perform work covered by the CBA, and it enforced the arbitration award.

We agree with the district court that the arbitrator acted within his authority in interpreting the CBA, and we affirm.

## I.  BACKGROUND

Monee is a tree, brush, and foliage nursery and landscaping contractor operating in the southwest suburbs of Chicago. Local 150 is a labor organization representing individuals who operate heavy equipment at landscaping and construction sites including Monee's. Monee and Local 150 were parties to a CBA that required Monee to use bargaining unit members of Local 150 to operate heavy equipment at landscaping work sites and to follow certain wage, benefit, and grievance procedures. The CBA between Monee and Local 150 consisted of a "Memorandum of Agreement" that also incorporated by reference the standard Illinois and Indiana Landscaping Contractors Labor Agreement ("Master Agreement").

In April 1992, a Local 150 representative approached Monee employees at a job site in Merrillville, Indiana, where heavy equipment was in use and asked to see their union cards. None of Monee's employees were able to produce a union card, and work was stopped at the site. After discussions between the parties, Local 150 agreed to issue a temporary permit to one of Monee's employees, and work at the site continued.

In November 1993, a Local 150 representative visited a Monee work site in Barrington, Illinois, and again requested to see employee union cards. A Monee employee operating heavy equipment was unable to produce a card and stated that he was not a member of the union. As a result, Local 150 filed a written grievance against Monee on November 17, 1993, for its use of a non-union employee to operate heavy equipment. That same month, Local 150 sent

an Arbitration Demand Letter ("scope letter") to the American Arbitration Association ("AAA") requesting arbitration of the grievance.

Monee responded to the request for arbitration by filing an action in Illinois state court seeking to enjoin the arbitration, claiming that a valid CBA did not exist between the parties. During the course of the litigation in state court, representatives from Local 150 visited Monee work sites in the spring of 1994, the fall of 1994, and on three separate occasions during the summer and fall of 1999. During each of the visits, Local 150 representatives observed Monee employees operating heavy equipment. On all of the visits Local 150 representatives asked Monee employees to present their union cards, and none of the employees were able to do so. Neither the Local 150 representatives nor the union filed additional written grievances with Monee at the time of the incidents. On September 25, 1996—66 days before a December 1, 1996, automatic renewal of the CBA—Monee sent a letter to Local 150 seeking to terminate their CBA. The Illinois state court ultimately determined the CBA was enforceable, and the Illinois appellate court affirmed that determination.

With the years of protracted litigation over the validity of the CBA completed, Local 150 resubmitted a scope letter to the AAA in November 1998, and the grievance went to arbitration in 2000. An arbitrator found that Monee had violated the CBA and sustained the grievance. Monee was ordered to pay the union $133,168 based on nonpayment of fringe benefit plans and the underpayment of wages from the date Local 150 filed the grievance to the date of the arbitration award.

Monee subsequently brought suit in federal court, attempting to vacate the arbitration award on the ground that the arbitrator had exceeded his authority. Specifically, Monee contended that the arbitrator erred by: (1) consider-

ing incidents beyond the single grievance filed on November 13, 1993; (2) considering matters after December 1, 1996, the date Monee allegedly terminated the CBA; and (3) awarding $133,168, which Monee viewed as excessive based on the CBA and the evidence presented. On cross-motions for summary judgment, the district court found that Monee's assertions were meritless and granted summary judgment in favor of Local 150. Monee now appeals, raising the same issues determined by the district court.

## II. ANALYSIS

We begin by noting the deferential standard of review that we apply to the review of an arbitrator's award. Although we review the district court's decision to grant Local 150's summary judgment motion de novo, *Am. Postal Workers Union, Milwaukee Local v. Runyon*, 185 F.3d 832, 835 (7th Cir. 1999), a court's examination of an arbitration award itself is extremely limited. *N. Ind. Pub. Serv. Co. v. United Steelworkers of Am.*, 243 F.3d 345, 346-47 (7th Cir. 2001). The examination of an arbitral award centers on whether the award "draws its essence" from the CBA. *Id.* at 347. "Indeed our review is 'close to nonexistent' if the arbitrator 'interprets' rather than 'revises' the collective bargaining agreement." *Ladish Co., Inc. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 10*, 966 F.2d 250, 252 (7th Cir. 1992) (citations omitted). If an arbitrator is even arguably acting within the scope of his authority in interpreting the CBA, his decision will be enforced. This applies even if the "court is convinced he committed [a] serious error" of fact or law in reaching his decision. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam).

A.  Arbitrator's Scope of Authority Under the CBA

First, in an apparent attempt to circumvent the deferential standard of review, Monee argues that the arbitration award should be vacated because the arbitrator exceeded the scope of his authority under the CBA by not limiting the arbitration according to the single grievance filed by Local 150 in November 1993. Specifically, Monee contends that the CBA expressly limited the authority of the arbitrator to consider grievances presented in writing[1] and that the November 17, 1993, grievance letter filed by Local 150 references only a single incident. Therefore, according to Monee, the CBA limited the issue to be considered by the arbitrator to a single violation in 1993 and nothing more. We disagree.

Monee is correct that the CBA requires grievances to be presented in writing, but neither the grievance letter nor the scope letter limits the grievance to a single incident. The November 17, 1993, written grievance stated that "[t]his Union shall continue to hold your company liable for all back wages and fringe benefits lost by members of the bargaining unit who would have worked had your company honored our agreement." Furthermore, the scope letter sent by Local 150 to the arbitrator and Monee in 1993 and again in 1998 identified the violation as continuing, and not limited to just the single incident complained of in the written grievance. It stated: "a dispute has arisen between the Union and Monee Nursery Company over a grievance filed by the Union regarding a continuing violation of Article 1." It was safely within the arbitrator's scope of authority to interpret the CBA to apply to incidents stem-

---

[1]  Article 8, Section 1 of the CBA states that in order for a grievance to be valid it "must be reduced to writing . . . and presented to the Company within two weeks following the occurrence of the event giving rise to the grievance."

ming from the same type of violation as was complained of in the November 17, 1993, written grievance and the December 1993 scope letter. *See Runyon*, 185 F.3d at 835 ("[An] arbitrator's interpretation of the scope of the issue must be upheld so long as it is rationally derived from the parties' submission.").

Monee attempts to take another bite at the same apple by reframing its argument to suggest that the arbitrator exceeded his authority by applying the incorrect standard to determine whether Local 150's grievance was a continuing violation spanning 1993-2000. In order to discern whether Monee's violation was continuing, the arbitrator asked whether the "action that flow[ed] from the error [was] what prompt[ed] the grievance and [was] the matter properly in arbitration,"[2] and he explained that a continuing violation is one in which the act complained of may be said to be repeated.[3] This court, when determining whether a subsequent incident was properly part of a continuing violation, has asked whether it was "based upon" the earlier action. *Metz v. Tootsie Roll Indus.*, 715 F.2d 299, 305 (7th Cir. 1983) (quoting *Local Lodge No. 1424, Int'l Ass'n of*

---

[2]  While the continuing violation doctrine most often arises when a plaintiff seeks to connect an earlier violation to a present one in order to overcome a statute of limitations hurdle, *see Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001), in this case, the concept of continuing violation is more akin to the common understanding of the words used. The continuing violation in the present case is, simply put, a violation of the CBA by Monee that was ongoing.

[3]  Monee cites employment discrimination cases for the proposition that, because Local 150's spot inspections occurred several years apart, the violation cannot be considered continuing. However, Monee provides no cases that adopt this formulation of the continuing violation doctrine in this context, and we decline to do so here.

*Machinists v. N.L.R.B.*, 362 U.S. 411, 422-23 (1960)). As the standard employed by the arbitrator strikes us as quite similar to the one endorsed by this court, we see no reason to quibble with his conclusion.

Moreover, it is clear that Monee was on notice that the violation was ongoing. Carl Quanstrom, the owner of Monee, admitted that at no point between 1993 and the hearing had Monee used union members to perform the work at issue or paid union-scale wages or benefits to his employees. The arbitrator pointed to the history of the dispute before the Illinois appellate court to note that "it strains credulity to believe the Employer was not on notice that the Union continued to demand the use of the bargaining unit personnel to perform bargaining unit work." Characterizations of the issue in the original November 1993 written grievance ("this Union shall continue to hold your company liable") and in the December 1993 scope letter ("a dispute has arisen . . . regarding a continuing violation") also supports this conclusion. *See Runyon*, 185 F.3d at 835 ("Parties to an arbitration may stipulate the issues they want determined and increase or limit the arbitrator's contractual authority by their express submission.") (citation omitted). We see no reason to reject the arbitrator's formulation of the grievance as a continuing violation, and find that he was acting within his scope of authority under the CBA when he considered incidents beyond the one referenced in the November 1993 grievance letter.

## B. Termination of the CBA

Next, Monee contends that the arbitrator's determination of liability through 2000 was also improper because Monee had terminated the CBA when it wrote to Local 150 on September 25, 1996, 66 days before the CBA would have been automatically renewed. The arbitrator found that

Monee's letter did not provide timely notice and thus did not properly terminate the agreement. At the center of the argument is a conflict between the Memorandum of Agreement, which required 90 days' notice in writing to cancel the CBA and the Master Agreement, which was incorporated by the Memorandum of Agreement and only required 60 days' notice. The arbitrator concluded that although the Memorandum of Agreement incorporated by reference the terms of the Master Agreement, it clearly created a different termination provision and had been specifically agreed to by the parties. Thus, the arbitrator enforced the 90-day provision in the Memorandum of Agreement and found Monee's attempt to cancel untimely. "Because the parties have contracted to have disputes settled by an arbitrator chosen by them . . ., it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987); *Ladish*, 966 F.2d at 253. Given the great deference with which the courts review arbitrators' interpretations of contract provisions, we find no error in the arbitrator's determination that the 90-day notice period in the Memorandum of Agreement controls.

In an attempt to give breath to its lifeless argument, Monee contends that the Illinois appellate court "determined" that Monee cancelled the CBA in 1996 and that the 60-day deadline controlled. The appellate court did not make the finding Monee claims. Although the court mentioned in its recitation of the facts that the Master Agreement required a 60-day notice to cancel the agreement, it explicitly stated that "neither of the parties took . . . action to terminate the contract."[4] *Monee Nursery & Landscaping*

---

[4] We find Monee's mischaracterization of the Illinois appellate court's decision troubling, and we remind it, as we did in oral argument, that an intentional misstatement of law before a court is a serious offense that violates Rule 3.3(a) of the Model Rules of

(continued...)

*Co. v. Local 150 Int'l Union of Operating Eng'rs*, 740 N.E.2d 94 (Ill. App. Ct. 1998) (unpublished opinion).

## C. Calculation of Damages

Lastly, Monee lodges multiple complaints regarding the arbitrator's calculation of the damages due to Local 150. Most of Monee's arguments rehash issues already contested or are presented in such a conclusory manner as to be difficult to evaluate and close to waiver. Further, as with an arbitrator's interpretation of a contract, we employ an extremely deferential standard of review to damages calculations. "[W]here it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." *Misco*, 484 U.S. at 38. Monee's main complaints, simply put, are that the arbitrator calculated wages for an eight-hour day rather than a four-hour day, and that the arbitrator based his calculations on the period between November and May when little to no landscaping services are performed. We examine each of these issues in turn.

First, Monee argues that, since Article 4, Section 1 of the CBA states that "a regular employee who reports for work and is assigned to work on Monday through Friday shall be

---

[4] (...continued)

Professional Conduct ("a lawyer shall not knowingly make a false statement of material fact or law to a tribunal") and can lead to sanctions under Rule 11(c) of the Federal Rules of Civil Procedure. *See Teamsters Local No. 579 v. B&M Transit, Inc.*, 882 F.2d 274, 280 (7th Cir. 1989) ("While a court must not sanction a party for a reasonable misconstruction of case law, a party is not entitled to deliberately ignore or misstate case law.") (internal citations omitted).

granted a minimum of four (4) hours of work or four (4) hours of pay per day," damages should only be awarded for four hours per day. But this provision does not limit employees' wages to four hours of pay, and it is obviously silent as to the number of hours actually worked by Monee employees. The arbitrator based his calculation of damages on the provision in the CBA that requires landscaping equipment operators to receive a specified hourly rate and Monee's citation to Section 1 gives us no reason to disturb the arbitrator's wage calculation.

Monee also argues that the arbitrator's award should be vacated because he based the award on a November through May period rather than on a May through November period. The arbitrator's reference to November through May is likely a scrivener's error, as the common period for landscaping services to be rendered is May through November. Even if we are mistaken, as long as the "arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Garvey*, 532 U.S. at 509. The award of damages was well within the scope of the arbitrator's authority; therefore, we enforce the arbitrator's decision with respect to damages.[5]

---

[5] Local 150 also filed a motion under Rule 38 of the Federal Rules of Appellate Procedure seeking sanctions for what it views to be Monee's frivolous appeal. Although not meritorious, Monee's appeal is not so frivolous as to be the type where "the result is foreordained by the lack of substance to the appellant's arguments," *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 938 (7th Cir. 1989), and Local 150 has not provided any evidence that Monee continued to litigate this case in bad faith or for the purpose of harassment or sheer obstinacy. *See Reid v. United States*, 715 F.2d 1148, 1154-55 (7th Cir. 1983). Local 150's motion is DENIED.

## III. CONCLUSION

For the reasons stated above, we AFFIRM the district court's judgment and ENFORCE the arbitration award.

A true Copy:

Teste:

_____
***Clerk of the United States Court of
Appeals for the Seventh Circuit***